| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| M. Jonathan Hayes (Bar No. 90388)<br>Matthew D. Resnik (Bar No. 182562)<br>Roksana D. Moradi (Bar No. 266572)<br>**SIMON RESNIK HAYES LLP**<br>15233 Ventura Blvd., Suite 250<br>Sherman Oaks, CA 91403<br>**Telephone:** (818) 783-6251<br>**Facsimile:** (818) 827-4919<br>jhayes@SRHLawFirm.com<br>matthew@SRHLawFirm.com<br>roksana@SRHLawFirm.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| ANTONIO GABRIEL DE LA TORRE,<br><br>Debtor. | CASE NO.: 9:15-bk-11231-PC<br><br>CHAPTER: 11<br><br>**NOTICE OF MOTION AND**<br>**MOTION FOR ORDER DETERMINING**<br>**VALUE OF COLLATERAL**<br>**[11 U.S.C. § 506(a), FRBP 3012)**<br>This motion is being made under **ONLY ONE** of the following notice procedures:<br>☐ **No hearing unless request under LBR 9013-1(o)(4);**<br>☒ **Hearing set by Movant: LBR 9013-1(d);**<br>☐ **Hearing set on Shortened Notice: LBR 9075-1(b); or**<br>☐ **Hearing on Emergency Basis: LBR 9075-1(a).**<br><br>DATE:  **January 6, 2016**<br>TIME:  **10:00 a.m.**<br>COURTROOM: **201**<br>ADDRESS:  **1415 State Street,**<br>  **Santa Barbara, California 93101-251** |

**Creditors Name:  PennyMac and Wells Fargo Bank**

1. **PLEASE TAKE NOTICE THAT  Antonio Gabriel De La Torre,** (Movant) requests an order valuing the collateral described below. This motion does not request lien avoidance (see LBR forms F 4003 for lien avoidance involving principal residences and judicial liens).

2. **NOTICE PROVISIONS AND DEADLINES FOR FILING AND SERVING A WRITTEN RESPONSE:** Your rights might be affected by this Motion. You may want to consult an attorney. Refer to the box checked below for the deadline to file and serve a written response. If you fail to timely file and serve a written response, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief. You must serve a copy of your opposition upon the Movant and the Movant's attorney and the United States trustee, and also serve a copy on the judge pursuant to LBR 5005-2(d) and the Court Manual.

a. ☐ **No Hearing Scheduled; Notice Provided Under LBR 9013-1(o):** This Motion is filed by the Movant pursuant to LBR 9013-1(o), which provides for granting of motions without a hearing. The full Motion is attached, including the legal and factual grounds upon which the Motion is made. If you wish to oppose this Motion, you must file a written response and request for hearing with the court and serve it as stated above **no later than 14 days after the date stated on the Proof of Service of this Motion** plus 3 additional days if you were served by mail, electronically, or pursuant to F.R.Civ.P. 5(b)(2)(D), (E), or (F).Your opposition must comply with LBR 9013-1(f) and (o).

b. ☒ **Hearing Set by Movant; Notice Provided Under LBR 9013-1(d):** This Motion is set for hearing on at least 21 days of notice pursuant to LBR 9013-1(d). The full Motion and supporting documentation are attached, including the legal and factual grounds upon which the Motion is made. If you wish to oppose this Motion, you must file a written response with the court and serve it as stated above **no later than 14 days prior to the hearing.** Your response must comply with LBR 9013-1(f). The undersigned hereby verifies that the hearing date and time selected were available for this type of Motion according to the judge's self-calendaring procedures [LBR 9013-1(b)].

c. ☐ **Hearing Requested on Shortened Notice under LBR 9075-1(b):** Movant has filed a separate motion asking the court to set a hearing on shortened notice, titled Application for Order Setting Hearing on Shortened Notice (Application). If the court grants the Application, the Movant will serve you with another document providing notice. The deadline to file and serve a written response will be contained in this document. If the court denies the Application, the Movant will provide written notice of a regular hearing date or other proposed disposition of this motion.

d. ☐ **Hearing Requested on Emergency Basis under LBR 9075-1(a): Hearing Requested on Emergency Basis under LBR 9075-1(a):** Movant has contacted the court and requested an emergency hearing on less than 48 hours notice. If the court grants the request, you will receive a separate Notice of Hearing that identifies the deadline for the Movant to file and serve the Motion and the deadline for you to file and serve a written response. If the court denies the request to set an emergency hearing, the Movant will provide written notice of a regular hearing date or other disposition of this motion and the deadline for filing an opposition.

Date: _12/1/2015_____    By: _____/s/ Roksana D. Moradi_____
                                                          Signature of Debtor or attorney for Debtor

                                            Name: _____Roksana D. Moradi_____
                                                          Printed name of Debtor or attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_June 2013_                                    Page 2                          **F 3012-1.MOTION.VALUATION**

**MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL**
**PURSUANT TO 11 U.S.C. § 506(a) AND FRBP 3012**

**1. The Movant is (check one):**

☒ The debtor
☐ A creditor
☐ The Official Committee of Creditors Holding Unsecured Claims
☐ Others (specify): _____

**2. The Collateral to be Valued:**

a. The Movant requests a determination of the value of the following collateral (Collateral).

☒ Real Property     **3728 Orange Drive**
*Street Address:* _____
*Unit Number:* _____
*City, State, Zip Code:* **Oxnard, CA 93036**

**Map 3 Pg 26 Part of Lot 64, APN: 149-0-042-220, Ventura County**

☐ Personal Property
   ☐ Vehicle
      *Year, manufacturer, type, and model:* _____
      *Vehicle Identification Number:* _____
      *Location of vehicle (if known):* _____

   ☐ Equipment:
      *Manufacturer, type, and characteristics:* _____
      *Serial number(s):* _____
      *Location (if known):* _____

   ☐ Other Personal Property (describe type, identifying information, and location):
      _____
      _____

☐ See attached page.

b. Purpose of the Valuation

☒ Treatment of the claim in a plan:

   ☐ Pursuant to 11 U.S.C. § 1322

   ☒ Pursuant to 11 U.S.C. § 1129

   ☐ Other _____

☐ Disposition or use of Collateral pursuant to 11 U.S.C. § 363;

☐ Other: (specify): _____
      _____

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                          Page 3                          **F 3012-1.MOTION.VALUATION**

c. Movant asserts that the value of the Collateral is $ **308,000** as of (date): **10/10/2015**.

Check One:

☐  Date bankruptcy case was commenced.

☒  Other (specify):    **Appraisal dated 10/10/2015 attached hereto as Exhibit "A."**

## 3. Liens Encumbering the Collateral:

The Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Balance of Lien Amount |
|---|---|---|
| First Lienholder: **PennyMac** | $220,000 | **$203,022 as of 9/18/2015 (per proof of Claim attached hereto as Exhibit "B").** |
| Second lienholder: **Wells Fargo** | $135,000 | **$133,013 as of 11/9/2015 (per proof of Claim attached hereto as Exhibit "C").** |

☐ See attached page for additional lien(s).

## 4. Determination of Secured/Unsecured Status:

Based upon paragraphs 2 and 3 above, Movant asserts the following:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| First Lienholder: **PennyMac** | $203,022* | $0* |
| Second lienholder: **Wells Fargo** | $104,978* | $28,036* |

☐ See attached page for additional lien(s).          **\*SEE NEXT PAGE**

## 5. Evidence in Support of Motion:

a.  Evidence establishing the value of the Collateral:
   ☒  Declaration of the debtor as owner of the Collateral
   ☒  Declaration of the expert witness
        ☒  Certified appraiser
        ☐  Other: _____
   ☐  Declaration of a party who can authenticate a market report e.g. Kelley Blue Book) pursuant to F.R.Evid. 803(17).
   ☒  Other: **Appraisal dated 10/10/2015 attached hereto as Exhibit "A."**

b.  Evidence establishing the amount of the claims related to the liens encumbering the Collateral
   ☒  Declaration of the debtor as owner of the Collateral
   ☐  Declaration of a witness authenticating a document that is an admissible statement of a party opponent (e.g. proof of claim or a recent loan statement) pursuant to F.R.Evid. 801(d)(2).
   ☒  Other:  **Exhibits "B" and "C"**

c.  Evidence establishing the priority of the lien encumbering the Collateral
   ☒  Declaration of the debtor as owner of the Collateral
d.  ☐  Other evidence (specify):

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                    Page 4                    **F 3012-1.MOTION.VALUATION**

**Based upon the foregoing, Movant requests that this Court value the Collateral as listed in paragraph 2.c. above and that the claims related to the liens encumbering the Collateral, listed in paragraph 3 above, are determined to be secured or unsecured as requested in paragraph 4 above.**

☐ See attached continuation page for additional provisions.

Respectfully submitted,

Date: 12/1/2015

By: /s/ Roksana D. Moradi

Signature of Debtor or attorney for Debtor

Name: Roksana D. Moradi

Printed name of Debtor or attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                                    Page 5                    F 3012-1.MOTION.VALUATION

*This Motion does not seek any relief with respect to the mortgages and/or liens.  The request is limited to a simple valuation of the property.

## DECLARATION OF THE DEBTOR AS OWNER OF THE COLLATERAL IN SUPPORT OF
## MOTION FOR ORDER TERMINING VALUE OF COLLATERAL

1. I, (state debtor's name) <u>Antonio Gabriel De La Torre</u> declare that I am the debtor in this bankruptcy case.

2. I make this declaration of my own personal knowledge and if called as a witness, could and would testify thereto.

3. I am the owner of the collateral listed in paragraph 1 of the Motion for Order Determining Value of Collateral to which this declaration is attached.

4. My opinion of the value of the Collateral is $ <u>308,000</u> as of (applicable date) <u>10/10/2015</u> based upon my personal knowledge, including but not limited to:

   ☒ Review of an appraisal (do not attach).
   ☐ Knowledge of comparable sales (do not attach).
   ☐ Other: _____

5. As of (applicable date), the Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Balance of Lien Amount |
|---|---|---|
| First Lienholder: PennyMac | $220,000 | $203,022 as of 9/18/2015 (per proof of Claim attached hereto as Exhibit "B"). |
| Second lienholder: Wells Fargo | $135,000 | $133,013 as of 11/9/2015 (per proof of Claim attached hereto as Exhibit "C"). |

The foregoing balances are established by true and correct copies of filed proofs of claim, or recent loan statements, or other documents attached to this declaration as **Exhibit "B" – "C."**

6. The purpose of the valuation is to provide for treatment of the claim of:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| First Lienholder: PennyMac | $203,022* | $0* |
| Second lienholder: Wells Fargo | $104,978* | $28,036* |

**\*SEE NEXT PAGE**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

<u>12/1/2015</u>
Date

**Antonio Gabriel De La Torre**
*Printed Name*

Signature

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                    Page 6                    **F 3012-1.MOTION.VALUATION**

*This Motion does not seek any relief with respect to the mortgages and/or liens.  The request is limited to a simple valuation of the property.

## DECLARATION OF EXPERT WITNESS IN SUPPORT OF
## MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL

I, Patrick McVicker declare:

1. I am over 18 years of age, and I am qualified to testify as an expert witness in my capacity as a:
   ☒ Licensed Residential Property Appraiser with license no. __AR 037417__
   ☐ Other: _____

2. Attached as **Exhibit A** to this declaration, is my report, which discloses all the data that I have used in forming my opinion.

3. My Opinion of the value of the Collateral is $ __308,000__ as of *(applicable date)* __10/10/2015__.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_Patrick McVicker_ (signature)
Signature

Patrick McVicker
Printed Name

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                             Page 7                    F 3012-1.MOTION.VALUATION

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403.**

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **12/1/2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Anita Carver**    anita.l.carver@wellsfargo.com
- **Karrollanne K Cayce**    ecfmail@aclawllp.com, kcayce@ecf.inforuptcy.com
- **Brian D Fittipaldi**    brian.fittipaldi@usdoj.gov
- **Brandye Foreman**    bforeman@mclaw.org
- **Daniel K Fujimoto**    wdk@wolffirm.com
- **M Jonathan Hayes**    jhayes@srhlawfirm.com,
  roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;staci@srhlawfirm.com;jhayesecf@gmail.com;sevan@srhlawfirm.com;carolyn@srhlawfirm.com;mike@s
- **Megan E Lees**    ecfcacb@aldridgepite.com, MEL@ecf.inforuptcy.com;mlees@aldridgepite.com
- **Sara Morgan**    sara.j.morgan@wellsfargo.com
- **Randall P Mroczynski**    randym@cookseylaw.com
- **Kelly M Raftery**    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- **John D Schlotter**    ecfmail@aclawllp.com
- **Joseph Smith**    joseph.smith4@wellsfargo.com
- **United States Trustee (ND)**    ustpregion16.nd.ecf@usdoj.gov
- **Jennifer H Wang**    jwang@cookseylaw.com, jodom@cookseylaw.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On (*date*) **12/1/2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*SECURED CREDITORS  ALL SERVED VIA CERTIFIED MAIL, EXCEPT FOR THOSE LISTED WITH A P.O. BOX AS P.O. BOXES DO NOT ACCEPT CERTIFIED MAIL (THOSE ARE SERVED VIA U.S. MAIL):*

**WELLS FARGO**

**Entity main address from California Secretary of State website:**

Well Fargo Bank, N.A.
101 N. Phillips Avenue
Sioux Falls, SD 57104

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                  Page 8                        **F 3012-1.MOTION.VALUATION**

**Entity's agent for service of process per California Secretary of State website:**

Well Fargo Bank, N.A
c/o CSC- Lawyer Incorporating Service
Agent for Service of Process
2710 Gateway Oaks Dr, Ste 150N
Sacramento, CA 95833

**Entity main address from FDIC website:**

Well Fargo Bank, N.A.
101 N. Phillips Avenue
Sioux Falls, SD 57104

**Bank officer from Wells Fargo's website:**

John G. Stumpf, President and CEO
Well Fargo Bank, N.A.
420 Montgomery Street
San Francisco, CA 94104

**Addresses from Schedules:**

Wells Fargo Bank, N.A.
Anita Carver
Home Equity Group
1 Home Campus X2303-01A

Wells Fargo Bank NA
Po Box 31557
Billings, MT 59107-1557

WF PLL
PO Box 94435
Albuquerque, NM 87199-4435

**Address from POC:**

Well Fargo Bank, N.A.
Home Equity Group
1 Home Campus X2303-01A
Des Moines, IA  50328-001

## PENNYMAC LOAN SERVICES

**Entity main address from California Secretary of State website:**

Pennymac Loan Services, LLC
6101 Condor Drive, Suite #310
Moorpark, CA 93021

**Entity's agent for service of process per California Secretary of State website:**

Pennymac Loan Services, LLC
c/o C T Corporation System
818 West Seventh St 2nd Fl
Los Angeles CA 90017

**Entity main address from FDIC website:**

N/A

**Bank officer from Entity website:**

Pennymac Loan Services, LLC
Stanford L. Kurland, CEO
6101 Condor Drive, Suite #310
Moorpark, CA 93021

**Addresses from Schedules:**

PennyMac Holdings, LLC
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-7921

PennyMac Loan Services, LLC
PO Box 514387
Los Angeles, CA 90051-4387

PennyMac Loan Services, LLC
c/o Karrollanne K Cayce
Aldridge Connors, LLP
780 Johnson Ferry Rd NE Ste 600
Atlanta, GA 30342

**Address from POC:**

PennyMac Loan Services, LLC
6101 Condor Drive, Suite #310
Moorpark, CA 93021

Served via regular mail:

Hon. Peter H. Carroll
U.S. Bankruptcy Court
Central District – Northern Branch
1415 State Street, Suite 230
Santa Barbara, CA 93101-2511

Antonio Gabriel De La Torre
2430 Lobelia Dr.
Oxnard, CA 93036

ALL CREDITORS:

Bank of America, N.A.
Malcolm Cisneros
2112 Business Center Drive, 2nd Fl.
Irvine, CA 92612

County Assessor
County Government Center
Room 100
San Luis Obispo, CA 93408-0001

County Tax Collector
P.O. Box 357
Santa Barbara, CA 93102-0357

Deutsche Bank National Trust Company
c/o The Wolf Firm
2955 Main Street, 2nd Fl.
Irvine, CA 92614-5909

Mercedes-Benz Financial Services USA
c/o Bk Servicing, LLC
PO Box 131265
Roseville, MN 55113-0011

ACS/NELNET EDUCATION
501 Bleecker Street
Utica, NY 13501

Account Recovery Services
PO 1691
Oxnard, CA 93032-1691

Alliance One
4850 Street Road, Suite 300
Trevose, PA 19053-6643

Bank of America
PO Box 982238
El Paso, TX 79998-2238

Bank of America Mortgage Servicing
1800 Tapo Canyon Road
Simi Valley, CA 93063-6712

Capital Management Services LP
698 South Ogden Street
Buffalo, NY 14206-2317

Capital One Bank, N.A.
PO Box 71083
Charlotte, NC 28272-1083

Capital One Bank, N.A.
15000 Capital One Drive
Richmond, VA 23238-1119

Chase Auto Finance
PO Box 901003
Fort Worth, TX 76101

Chase Credit Card Services
PO Box 15298
Wilmington, DE 19850-5298

Chase Mortgage
PO Box 24696
Columbus, OH 43224-0696

Citi Credit Card Services
PO Box 6241
Sioux Falls, SD 57117-6241

County of Ventura
5171 Verdugo Way
Camarillo, CA 93012-8603

Credit Collection Services
Two Wells Ave.
Newton, MA 02459-3246

Discover Bank
Discover Products Inc.
PO Box 3025
New Albany, OH 43054-3025

Discover Financial Services LLC
PO Box 3025
New Albany, OH 43054-3025

First Source Advantage LLC
PO Box 628
Buffalo, NY 14240-0628

GC Services LP
6330 Gulfton
Houston, TX 77081

Global Credit Collection
5440 North Cumberland, Suite 300
Chicago, IL 60656-1486

Kevin Jewelers
25845 Railroad Ave., Suite 4
Saugus, CA 91350-2544

MB Financial Services
36455 Corporate Drive
Farmington Hills, MI 48331-3552

MCYDSNB
9111 Duke Road
Mason, OH 45040-8999

NELNET EDUCATION LOAN FUNDING TRUST
c/o Educational Credit Management Corp.
PO Box 16408
St. Paul, MN 55116-0408

Northland Group Inc.
PO Box 390905
Minneapolis, MN 55439-0905

Professional Recovery Systems, Inc.
PO Box 1880
Voorhees, NJ 08043-7880

Quicken Loans, Inc.
635 Woodward Ave.
Detroit, MI 48226-3408

SYNCB/ Jewelry Accents
c/o PO Box 965036
Orlando, FL 32896-0001

SYNCB/ Sync Bank Luxury
c/o PO Box 965036
Orlando, FL 32896-0001

Suttell Hammer and White
PO Box C-90006
Bellevue, WA 98009

US Bank
PO Box 130
Hillsboro, OH 45133-0130

US Bank
Bankruptcy Department
PO Box 5229
Cincinnati, OH 45201-5229

US Bank Credit Card Services
101 5th Street East, Suite A
Saint Paul, MN 55101-1808

United Recovery Systems LP
PO Box 722929
Houston, TX 77272-2929

Ventura County Credit Union
6026 Telephone Road
Ventura, CA 93003-5399

WF Finance
800 Walnut Street
Des Moines, IA 50309-3605

Wells Fargo Bank Card Services
PO Box 14517
Des Moines, IA 50306-3517

Franchise Tax Board
Bankruptcy Section MS: A-340
PO Box 2952
Sacramento, CA 95812

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

Employment Development Dept.
Bankruptcy Group MIC 92E
Po Box 826880
Sacramento, CA 94280

State Board of Equalization
Account Information Group, MIC: 29
P.O. Box 942879
Sacramento, CA 94279-0029

U. S. Securities and Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

Attorney General
United States Department of Justice
Ben Franklin Station
P. O. Box 683
Washington, DC 20044

Civil Process Clerk
United States Attorney's Office
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA 90012

Portfolio Recovery Associates, LLC
PO Box 41067
Norfolk, VA 23542

REMOVED ADDRESS/RETURNED MAIL:

~~Tri Countries Bank~~
~~PO Box 494549~~
~~Redding, CA 96049-4549~~

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) ____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 1, 2015 | **Ja'Nita Fisher** | **/s/ Ja'Nita Fisher** |
|---|---|---|
| Date | Printed Name | Signature |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT A

Atlas Appraisal Services
805-570-3787

File No. 001724

APPRAISAL OF



LOCATED AT:

3728 Orange Drive
Oxnard, CA  93036

CLIENT:

Anthony De La Torre
2430 Lobelia Drive
Oxnard, CA 93036

AS OF:

October 10, 2015

BY:

Patrick McVicker

Atlas Appraisal Services
805-570-3787

File No. 001724

Anthony De La Torre
2430 Lobelia Drive
Oxnard, CA 93036

File Number:  001724

In accordance with your request, I have appraised the real property at:

3728 Orange Drive
Oxnard, CA  93036

The purpose of this appraisal is to develop an opinion of the defined value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the defined value of the property as of   October 10, 2015                    is:

$308,000
Three Hundred Eight Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, assignment conditions and appropriate certifications.

Patrick McVicker

Appraisal

## Residential Appraisal Report

File No. 001724

The purpose of this appraisal report is to provide the client with a credible opinion of the defined value of the subject property, given the intended use of the appraisal.

| Client Name/Intended User | Anthony De La Torre | E-mail Tonyloans2000@yahoo.com | | |
|---|---|---|---|---|
| Client Address | 2430 Lobelia Drive | City Oxnard | State CA | Zip 93036 |

Additional Intended User(s) The intended users of this report are Anthony De La Torre and associated lawyers.

Intended Use The intended use of this report is to determine market value for bankruptcy purposes. This is not for mortgage transaction purposes and cannot be used for any other purpose other than to determine market value for the bankruptcy.

| Property Address 3728 Orange Drive | City Oxnard | State CA | Zip 93036 |
|---|---|---|---|

Owner of Public Record Antonio Sr-E & Jr De La Torre    County Ventura

Legal Description Santa Clara Del Norte RHO

| Assessor's Parcel # 149-0-042-220 | Tax Year 2014 | R.E. Taxes $ 3,561 |
|---|---|---|
| Neighborhood Name Nyeland Acres | Map Reference 523/D2 | Census Tract 0050.02 |

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

| Prior Sale/Transfer: | Date | Price | Source(s) Public Records# |
|---|---|---|---|

Analysis of prior sale or transfer history of the subject property (and comparable sales, if applicable) Subject> The subject has not sold or listed in the past 36 months or 3 years

Offerings, options and contracts as of the effective date of the appraisal None

| Neighborhood Characteristics | | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban | [X] Suburban | [ ] Rural | Property Values | [X] Increasing | [ ] Stable | [ ] Declining | PRICE | AGE | One-Unit | 69 % |
| Built-Up | [X] Over 75% | [ ] 25-75% | [ ] Under 25% | Demand/Supply | [ ] Shortage | [X] In Balance | [ ] Over Supply | $(000) | (yrs) | 2-4 Unit | 1 % |
| Growth | [ ] Rapid | [X] Stable | [ ] Slow | Marketing Time | [X] Under 3 mths | [ ] 3-6 mths | [ ] Over 6 mths | 275 Low | 15 | Multi-Family | 0 % |
| | | | | | | | | 550 High | 90 | Commercial | 10 % |
| | | | | | | | | 400 Pred. | 75 | Other AG | 20 % |

Neighborhood Boundaries To the South is The 101 Freeway, to the East is Central Avenue, to the West is Vineyard Avenue, and to the North is also Central Avenue.

Neighborhood Description The subject neighborhood is made up of primarily single family residence tract homes. Most homes have been remodeled and upgraded throughout the years and appear to conform. There is shopping, schooling, parks and recreation, and employment all within a five mile radius.

Market Conditions (including support for the above conclusions) See Attached Addendum

| Dimensions See plat map for Dimensions | Area 27,598 sf | Shape Slightly Irregular | View None |
|---|---|---|---|

Specific Zoning Classification RE    Zoning Description Single Family Residence

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe. None

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt/Typical | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley None | | |

Site Comments

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION | materials | INTERIOR | materials |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One w/Acc. unit | | [ ] Concrete Slab [X] Crawl Space | | Foundation Walls | Concrete/Average | Floors | Crpt/Avg/Vinyl/fai |
| # of Stories 1 | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls | Wood/Good | Walls | Drywall/avg |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area 0 sq. ft | | Roof Surface | Comp./Good | Trim/Finish | Paint/avg |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 0 % | | Gutters & Downspouts Yes/Average | | Bath Floor | Vinyl/Average |
| Design (Style) Manufactured home | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type | Almnm/Avg | Bath Wainscot Fiberglass/Avg | |
| Year Built 1985 | | | | Storm Sash/Insulated No/Unknown | | Car Storage | None |
| Effective Age (Yrs) 20 | | | | Screens | Yes/Average | [X] Driveway # of Cars 2 | |
| Attic | [ ] None | Heating [X] FWA [ ] HW | [ ] Radiant | Amenities | WoodStove(s) # 0 | Driveway Surface Concrete | |
| [ ] Drop Stair [ ] Stairs | | [ ] Other Fuel Gas | | [ ] Fireplace(s) # 0 | [X] Fence Exterior | [ ] Garage # of Cars 0 | |
| [ ] Floor [X] Scuttle | | Cooling [ ] Central Air Conditioning | | [X] Patio/Deck Open | [X] Porch Cvrd | [ ] Carport # of Cars 0 | |
| [ ] Finished [ ] Heated | | [ ] Individual [X] Other None | | [ ] Pool None | [ ] Other None | [ ] Att. [ ] Det [ ] Built-in | |

Appliances [P] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [P] Microwave [P] Washer/Dryer [X] Other (describe) "P"=Personal Property

Finished area above grade contains: 7 Rooms 5 Bedrooms 2 Bath(s) 1,288 Square Feet of Gross Living Area Above Grade

Additional Features Subject offers well maintained landscaping with sprinklers and an abundance of mature vegetation, and exterior site fencing.

Comments on the Improvements No updates in the prior 10 years;Subject has been moderately maintained, updated/remodeled throughout it's life, therefore, the effective age is less than the actual age. No signs of functional or external obsolescence were noted. Repairs Needed >The exterior of the home is in average to good condition. The interior of the home is in average to fair condition with soiled carpet, worn vinyl flooring, kitchen in need of remodel, and home to be repainted on the interior and cleaned as well. The cost to cure these items would be roughly $8,000. The subject property offers vinyl flooring throughout including kitchen, baths, and bedrooms. The kitchen counters are laminate, and the bath counter vanities are corian. The overall quality of the home is average. The subject home is a manufactured home and considered average quality.

Produced using ACI software, 800.234.8727 / www.aciweb.com
Page 1 of 4

This form Copyright © 2005-2010 ACI Divers of ISO Clients Services, Inc., All Rights Reserved.
(gPAR™) General Purpose Appraisal Report  05/2010
GPAR1004_10.06262040

gpar™

Appraisal

## Residential Appraisal Report

File No. 001724

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | +(-) $ Adjustment | COMPARABLE SALE NO. 2 | +(-) $ Adjustment | COMPARABLE SALE NO. 3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 3728 Orange Drive Oxnard | 1114 Orange Drive Oxnard CA 93036 | | 2614 Balboa Street Oxnard CA 93036 | | 3671 Orange Drive Oxnard CA 93036 | |
| Proximity to Subject | | 1.62 miles NW | | 1.99 miles NW | | 0.06 miles NW | |
| Sale Price | $ | $ 450,000 | | $ 419,000 | | $ 355,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 342.47 sq. ft. | | $ 295.90 sq. ft. | | $ 263.35 sq. ft. | |
| Data Source(s) | | VTA Mls #215001146;DOM 41 | | VTA Mls #214016740;DOM 324 | | VTA Mls #215003088;DOM 0 | |
| Verification Source(s) | | Doc #32432 | | Doc #39639 | | Doc #34966 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | Listing Price>> Sales Type>> | LP>$449,900 Standard, 2,000 | -2,000 | LP>$419,000 Standard Sale | | LP>359,999 Standard Sale | |
| Date of Sale/Time | | 03/05/2015 | | 03/19/2015 | | 03/10/2015 | |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 27,598 sf | 13,300 sf | +14,000 | 18,750 sf | +9,000 | 6,677 | +21,000 |
| View | None | None | | None | | None | |
| Design (Style) | Manufactured | Ranch | | Ranch | | Ranch | |
| Quality of Construction | Average | Good | -40,000 | Good | -40,000 | Good | -40,000 |
| Actual Age | 1985 | 1950 | 0 | 1966 | 0 | 1962 | 0 |
| Condition | Average/Fair | Good | -15,000 | Good | -15,000 | Good | -15,000 |
| Above Grade | Total 7 Bdrms 5 Baths 2 | Total 6 Bdrms 3 Baths 2 | | Total 7 Bdrms 4 Baths 3 | -10,000 | Total 6 Bdrms 3 Baths 2 | |
| Room Count | | | | | | | |
| Gross Living Area 45 | 1,288 sq. ft. | 1,314 sq. ft. | 0 | 1,416 sq. ft. | -6,000 | 1,348 sq. ft. | 0 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA None | FWA None | | FWA None | | FWA None | |
| Energy Efficient Items | None of value | None of value | | None of value | | None of value | |
| Garage/Carport | 2 Car Carport | 2 Car Garage | -10,000 | 2 Car Driveway | +10,000 | 2 Car Garage | -10,000 |
| Porch/Patio/Deck | Patio/Porch | Patio/Porch | | Patio/Porch | | Patio/Porch | |
| Fireplace | None | Fireplace | -3,500 | None | | Fireplace | -3,500 |
| Pool and Spa | None | None | | None | | None | |
| Amenities | None | None | | Guest House | -25,000 | None | |
| Net Adjustment (Total) | | [ ] + [X] - $ 56,500 | | [ ] + [X] - $ 77,000 | | [ ] + [X] - $ 47,500 | |
| Adjusted Sale Price of Comparables | | Net Adj. -12.6% Gross Adj. 18.8% $ 393,500 | | Net Adj. -18.4% Gross Adj. 27.4% $ 342,000 | | Net Adj. -13.4% Gross Adj. 25.2% $ 307,500 | |

Summary of Sales Comparison Approach   See Attached Addendum

**COST APPROACH TO VALUE**

Site Value Comments   Depreciation may be defined as any loss of value from any cause.   Physical Deterioration results from deterioration from aging and use.  Functional Obsolescence results from a lack of utility or desirability due to design or market perception of the improvements.  These types of depreciation may be curable or incurable. Larger land to value ratios are typical in this market and exceed 30% of the total value. The extraction method was utilized to determine land value.

ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW

| | | OPINION OF SITE VALUE | = $ | 210,000 |
|---|---|---|---|---|
| Source of cost data Marshall and Swift data and/or other Services | | Dwelling 1,288 Sq. Ft. @ $ 80 | = $ | 103,040 |
| Quality rating from cost service Average   Effective date of cost data Current | | Sq. Ft. @ $ | = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | Fence,Patio | | 5,000 |
| See Attached Addendum | | Garage/Carport Sq. Ft. @ $ 45 | = $ | 0 |
| | | Total Estimate of Cost-New | = $ | 108,040 |
| | | Less 50 Physical Functional External | | |
| | | Depreciation $58,500 | = $ ( | 58,500) |
| | | Depreciated Cost of Improvements | = $ | 49,540 |
| | | "As-is" Value of Site Improvements | = $ | 50,000 |
| | | INDICATED VALUE BY COST APPROACH | = $ | 309,540 |

**INCOME APPROACH TO VALUE**

Estimated Monthly Market Rent $ 0 X Gross Rent Multiplier 0 = $ 0 Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)   The income approach to value was not utilized in this report due to the limited rental data in this market.

Indicated Value by: Sales Comparison Approach $ 308,000   Cost Approach (if developed) $ 309,540   Income Approach (if developed) $ 0

In this appraisal, one approach to value was applied . All consideration is given to the Direct Sales Comparison Analysis (Market Approach), as it best reflects the actions of typical buyers in the marketplace, where an adequate supply of relevant data exists.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,
[ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed [ ] subject to the following:

Based on the scope of work, assumptions, limiting conditions and appraiser's certification, my (our) opinion of the defined value of the real property that is the subject of this report is $ 308,000 as of October 10, 2015 which is the effective date of this appraisal.



Produced using ACI software, 800.234.8727 www.aciweb.com
Page 2 of 4

This form Copyright © 2005, 2010 ACI Division of ISO Claims Services, Inc. All Rights Reserved
kjPAR™) General Purpose Appraisal Report 05/2010 D
GPAR.004_10.05.26.00.0

The Mackelburg Group

Appraisal

## Residential Appraisal Report

File No. 001724

| FEATURE | SUBJECT | COMPARABLE SALE NO 4 | +(-) $ Adjustment | COMPARABLE SALE NO 5 | +(-) $ Adjustment | COMPARABLE SALE NO 6 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 3728 Orange Drive / Oxnard | 3465 Nyeland Avenue / Oxnard CA 93036 | | 732 Walnut Drive / Oxnard CA 93036 | | 2686 Balboa Street / Oxnard CA 93036 | |
| Proximity to Subject | | 0.31 miles SW | | 1.81 miles NW | | 1.96 miles NW | |
| Sale Price | $ | $ 349,000 | | $ 319,000 | | $ 325,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 317.27 sq. ft. | | $ 310.01 sq. ft. | | $ 297.07 sq. ft. | |
| Data Source(s) | | VTA Mls #215011131;DOM 55 | | VTA Mls #215002927;DOM 3 | | VTA Mls #215014371;DOM 28 | |
| Verification Source(s) | | Doc #139183 | | Doc #31742 | | Tax Records/Listing | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | | DESCRIPTION | | DESCRIPTION | |
| Sale or Financing Concessions | Listing Price>> Sales Type>> | LP>389,000 Standard Sale | | LP>319,000 Standard Sale | | LP>325,000 Standard Sale | |
| Date of Sale/Time | | 09/17/2015 | | 03/04/2015 | | Listing/Cntngnt | |
| Location | Residential | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 27,598 sf | 7,600 | +20,000 | 13,110 | +15,000 | 7,500 | +20,000 |
| View | None | None | | None | | None | |
| Design (Style) | Manufactured | Ranch | 0 | Ranch | 0 | Ranch | 0 |
| Quality of Construction | Average | Average | -10,000 | Average | -10,000 | Average | -10,000 |
| Actual Age | 1985 | 1988 | 0 | 1952 | 0 | 1958 | 0 |
| Condition | Average/Fair | Good | -15,000 | Average | -5,000 | Average | -5,000 |
| Above Grade Room Count | Total 7 / Bdrms 5 / Baths 2 | Total 6 / Bdrms 3 / Baths 2 | 0 | Total 4 / Bdrms 2 / Baths 1 | +10,000 | Total 4 / Bdrms 2 / Baths 1 | +10,000 |
| Gross Living Area 45 | 1,288 sq. ft. | 1,100 sq. ft. | 8,000 | 1,029 sq. ft. | 12,000 | 1,094 sq. ft. | 9,000 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA None | FWA None | | FWA None | | FWA None | |
| Energy Efficient Items | None of value | None of value | | None of value | | None of value | |
| Garage/Carport | 2 Car Carport | 2 Car Garage | -10,000 | 2 Car Garage | -10,000 | 2 Car Driveway | +10,000 |
| Porch/Patio/Deck | Patio/Porch | Patio/Porch | | Patio/Porch | | Patio/Porch | |
| Fireplace | None | None | | None | | None | |
| Pool and Spa | None | None | | None | | None | |
| Amenities | None | None | | None | | None | |
| Net Adjustment (Total) | | [X] + [ ] - $ | 7,000 | [X] + [ ] - $ | 12,000 | [X] + [ ] - $ | 34,000 |
| Adjusted Sale Price of Comparables | | Net Adj. -2.0% Gross Adj. 18.1% $ | 342,000 | Net Adj. 3.8% Gross Adj. 19.4% $ | 331,000 | Net Adj. 10.5% Gross Adj. 19.7% $ | 359,000 |

Summary of Sales Comparison Approach   Sales Comparison Approach:  The Sales Comparison Approach is based on the premise that a buyer would pay no more for a specific property than the cost obtaining a property with the same quality, utility, and perceived benefits of ownership. It is based on the principals of supply and demand, balance, substitution, and externalities.  We have researched and analyzed many comparables to analyze in this approach. All sales have been researched through numerous sources, inspected, and verified by a party to the transaction, or through MLS, or public records data. To the best of the appraisers' knowledge, the comparables presented and utilized in this report represent the most relevant data appropriate for the analysis and valuation of the subject property.

The price a buyer will pay for a property, and the price a seller will sell a property for depends on many factors, including current market conditions, interest rates, the size (building/ property square footage), and condition of the property, location, and the properties lot size.

Out of all of the factors (after location), that a buyer is most typically concerned with is the size of the home or the Building square footage for comparison purposes, thus in the selection of comparable sales for this report, the living square footage of the comparable sales was the main factor in the selection process, useable site size, and then condition. All the comparable used are in the same market location.

Adjustment Notes:  When determinable, adjustments for significant differences in improvements were derived by matched paired analysis, regression analysis or abstraction. When matched paired analysis or abstraction are not possible or practical, bracketing and/or the appraiser's knowledge and experience of the market area are utilized in determining the appropriate adjustments for differences.
The relative similarity of a comparable to the subject is expressed through a percentage or dollar adjustment. In most instances, the adjustments involve the appraiser's judgement. These are expressed in percentages. Percentages are intended to reflect the magnitude and direction of the adjustment and should NOT be construed as a precise mathematical calculation based on quantifiable market evidence. In most instances, since there is a large number of elements (or variables), that influence value in real property transactions, it makes it mathematically impossible to isolate and quantify a particular element's impact on the final price, thus most adjustments to the comparables are based on the Matched Pairs Extraction Technique.



This form Copyright © 2005-2010 ACI Division of ISO Carex Services, Inc.  All Rights Reserved.
fgPAR™) General Purpose Appraisal Report  05/2010
GPAR1004_10052010

Appraisal

## Residential Appraisal Report

File No. 001724

| FEATURE | SUBJECT | COMPARABLE SALE NO. 7 | | COMPARABLE SALE NO. 8 | | COMPARABLE SALE NO. 9 | |
|---|---|---|---|---|---|---|---|
| Address | 3728 Orange Drive Oxnard | | | | | | |
| Proximity to Subject | | | | | | | |
| Sale Price | $ | | $ | | $ | | $ |
| Sale Price/Gross Liv. Area | $        0.00 sq. ft. | $     0.00 sq. ft. | | $     0.00 sq. ft. | | $     0.00 sq. ft. | |
| Data Source(s) | | | | | | | |
| Verification Source(s) | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | Listing Price>> Sales Type>> | | | | | | |
| Date of Sale/Time | | | | | | | |
| Location | Residential | | | | | | |
| Leasehold/Fee Simple | Fee Simple | | | | | | |
| Site | 27,598 sf | | | | | | |
| View | None | | | | | | |
| Design (Style) | Manufactured | | | | | | |
| Quality of Construction | Average | | | | | | |
| Actual Age | 1985 | | | | | | |
| Condition | Average/Fair | | | | | | |
| Above Grade | Total / Bdrms / Baths  7 / 5 / 2 | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | | | | | | | |
| Gross Living Area 45 | 1,288 sq. ft. | sq. ft. | | sq. ft. | | sq. ft. | |
| Basement & Finished Rooms Below Grade | 0sf | | | | | | |
| Functional Utility | Average | | | | | | |
| Heating/Cooling | FWA None | | | | | | |
| Energy Efficient Items | None of value | | | | | | |
| Garage/Carport | 2 Car Carport | | | | | | |
| Porch/Patio/Deck | Patio/Porch | | | | | | |
| Fireplace | None | | | | | | |
| Pool and Spa | None | | | | | | |
| Amenities | None | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $          0 | ☒ + ☐ - | $          0 | ☒ + ☐ - | $          0 |
| Adjusted Sale Price of Comparables | | Net Adj.     % Gross Adj.     % | $          0 | Net Adj.     % Gross Adj.     % | $          0 | Net Adj.     % Gross Adj.     % | $          0 |

Summary of Sales Comparison Approach    Adjustment Notes Continued: Adjustments are made for the differences to the comparable sales to the subject at market reaction for this area. The grid adjustments, unless otherwise stated, are deemed to be Self-Explanatory.

Site Sizes: The utility of a lot can outweigh the importance of its total size. Home buyers/sellers often prefer properties that allow for easy indoor-outdoor living and provide level areas for children, pets, and gardening. Critical factors in lot valuation are the size and character of typical lots in the area. In a subdivision where all the homes are on flat lots, the ones with the largest "useable" yards usually command the highest prices. Homes on lots that are smaller than what is typical for an area often sell for less. Overall, the importance of lot size depends on what prospective buyers want and need, and the main factor in the valuation of site/lot sizes is "useable" lot size of the property itself. Useable lot sizes are usually subjective and estimated by the appraiser and or buyer and seller.

Total Room & Bedrooms:    No total room or bedroom adjustments were found to be warranted within this market area.

Gross Living Area (GLA):    Adjustments are/were only made when differences in GLA exceeded 100 Square feet +- (Due to measurement differences), and was rounded.   The difference (if any), between the measured (if property was measured), GLA and public records reporting of GLA can be attributed to rounding, and/or minor differences in the way a certain person would measure a property.

Some times the subject property may not be measured and the floor plan provided by the builder or owner may be used.  If this is the case of this report, the the total square footage of the subjects building is taken from the Country Assessors Records as this is the most reliable source available for total living square footage of the subject property and the comparable sales used in this report.  If a floor plan is used and the subject was not measured, then it is a special assumption and condition of this report that the County Assessors records is correct as to the subjects total building square footage.

Amenities (Items under Room Count & Square Footage in grid): The sales were adjusted for amenity differences (if any), at what is considered to be market reaction for this area.



Appraisal
Residential Appraisal Report

File No. 001724

## Scope of Work, Assumptions and Limiting Conditions

Scope of work is defined in the Uniform Standards of Professional Appraisal Practice as " the type and extent of research and analyses in an assignment." In short, scope of work is simply what the appraiser did and did not do during the course of the assignment. It includes, but is not limited to: the extent to which the property is identified and inspected, the type and extent of data researched, the type and extent of analyses applied to arrive at opinions or conclusions.

The scope of this appraisal and ensuing discussion in this report are specific to the needs of the client, other identified intended users and to the intended use of the report. This report was prepared for the sole and exclusive use of the client and other identified intended users for the identified intended use and its use by any other parties is prohibited. The appraiser is not responsible for unauthorized use of the report.

The appraiser's certification appearing in this appraisal report is subject to the following conditions and to such other specific conditions as are set forth by the appraiser in the report. All extraordinary assumptions and hypothetical conditions are stated in the report and might have affected the assignment results.

1. The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable. The property is appraised as though under responsible ownership.

2. Any sketch in this report may show approximate dimensions and is included only to assist the reader in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser is not required to give testimony or appear in court because of having made the appraisal with reference to the property in question, unless arrangements have been previously made thereto.

4. Neither all, nor any part of the content of this report, copy or other media thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, or the firm with which the appraiser is connected), shall be used for any purposes by anyone but the client and other intended users as identified in this report, nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent of the appraiser.

5. The appraiser will not disclose the contents of this appraisal report unless required by applicable law or as specified in the Uniform Standards of Professional Appraisal Practice.

6. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser is assumed by the appraiser.

7. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions, or for engineering or testing, which might be required to discover such factors. This appraisal is not an environmental assessment of the property and should not be considered as such.

8. The appraiser specializes in the valuation of real property and is not a home inspector, building contractor, structural engineer, or similar expert, unless otherwise noted. The appraiser did not conduct the intensive type of field observations of the kind intended to seek and discover property defects. The viewing of the property and any improvements is for purposes of developing an opinion of the defined value of the property, given the intended use of this assignment. Statements regarding condition are based on surface observations only. The appraiser claims no special expertise regarding issues including, but not limited to: foundation settlement, basement moisture problems, wood destroying (or other) insects, pest infestation, radon gas, lead based paint, mold or environmental issues. Unless otherwise indicated, mechanical systems were not activated or tested.

This appraisal report should not be used to disclose the condition of the property as it relates to the presence/absence of defects. The client is invited and encouraged to employ qualified experts to inspect and address areas of concern. If negative conditions are discovered, the opinion of value may be affected.

Unless otherwise noted, the appraiser assumes the components that constitute the subject property improvement(s) are fundamentally sound and in working order.

Any viewing of the property by the appraiser was limited to readily observable areas. Unless otherwise noted, attics and crawl space areas were not accessed. The appraiser did not move furniture, floor coverings or other items that may restrict the viewing of the property.

9. Appraisals involving hypothetical conditions related to completion of new construction, repairs or alteration are based on the assumption that such completion, alteration or repairs will be competently performed.

10. Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for property insurance coverage/use.

11. The ACI General Purpose Appraisal Report (GPAR™) is not intended for use in transactions that require a Fannie Mae 1004/Freddie Mac 70 form, also known as the Uniform Residential Appraisal Report (URAR).

Additional Comments Related To Scope Of Work, Assumptions and Limiting Conditions

This form Copyright © 2005-2010 ACI Division of ISO Claims Services, Inc., All Rights Reserved
(GPAR™) General Purpose Appraisal Report 05/2010
GPAR1004_10 06062010



Appraisal
Residential Appraisal Report                                      File No. 001724

## Appraiser's Certification

The appraiser(s) certifies that, to the best of the appraiser's knowledge and belief:

1  The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are the appraiser's personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise stated, the appraiser has no present or prospective interest in the property that is the subject of this report and has no personal interest with respect to the parties involved.

4. The appraiser has no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

8. Unless otherwise noted, the appraiser has made a personal inspection of the property that is the subject of this report.

9. Unless noted below, no one provided significant real property appraisal assistance to the appraiser signing this certification. Significant real property appraisal assistance provided by:

Additional Certifications:
FHA Certified, Expert Court Witness, Estate Homes.

Definition of Value:   [X] Market Value   [ ] Other Value: _____

Source of Definition: As defined by The Appraisal Institute.

Market Value:

Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus.  Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby,

1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised, and acting in what they consider their own best interest;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

ADDRESS OF THE PROPERTY APPRAISED:
3728 Orange Drive
Oxnard, CA  93036
EFFECTIVE DATE OF THE APPRAISAL: October 10, 2015
APPRAISED VALUE OF THE SUBJECT PROPERTY $ 308,000

| APPRAISER | SUPERVISORY APPRAISER |
|---|---|
| Signature: | Signature: |
| Name: Patrick McVicker | Name: |
| State Certification # AR029525 | State Certification # |
| or License # | or License # |
| or Other (describe): _____ State #: | State: |
| State: CA | Expiration Date of Certification or License: |
| Expiration Date of Certification or License: 06/14/2017 | Date of Signature: |
| Date of Signature and Report: 11/06/2015 | Date of Property Viewing: |
| Date of Property Viewing: | Degree of property viewing: |
| Degree of property viewing: | [ ] Interior and Exterior   [ ] Exterior Only   [ ] Did not personally view |
| [ ] Interior and Exterior   [ ] Exterior Only   [ ] Did not personally view | |



This form Copyright © 2005-2010 ACI Division of ISO Claims Services, Inc.  All Rights Reserved.
(gPAR™) General Purpose Appraisal Report  05/2010
GPAR1004_1005262010

The Mackelburg Group

ADDENDUM

| Client: Anthony De La Torre | | File No.: 001724 |
| Property Address: 3728 Orange Drive | | Case No.: |
| City: Oxnard | State: CA | Zip: 93036 |

**Neighborhood Market Conditions**
See Attached 1004MC Addendum. The market appears to be stable at this time. Supply and demand appears to be in balance. Short pay listings and REO properties are present in the area but do not appear to be driving down values. Home prices have reached a range attracting investors. Days on market are under three months and sales to list price ratios are roughly 100%. Financing is favorable with record low interset rates. Conventional, FHA, and some VA loans are readily available.

**Comments on Sales Comparison**
The Sales Comparison Approach compares sales of similar properties with the subject property. Each comparable sale is adjusted for its inferior or superior characteristics. The values derived from the adjusted comparable sales form a range of value for the subject. By process of correlation and analysis, a final indicated value is derived .
Due to the lack of available " Model Match " sales within the subject's direct marketing area it was necessary to use sales that vary from the subject in one or more respects. However, these sales provide a reasonable basis for comparison and are good value indicators for the subject's market area. All comparables were given some consideration in the final opinion of value. The comparable search was derived through a one mile boundary with gla differences not exceeding 20%. Lot sizes vary as no other larger sized lot homes could be found. Design and appeal are all relatively similar. Lot size adjustments were made at $1.00 per sf and rounded. Bathrooms were adjusted at $10,000. Comps one, two, and three were all highly upgraded with remodeled kitchens and baths. Comp four was of average similar quality with far superior condition. Comps five and six were of similar quality with slightly superior condition. Comps three and four were given the most weight being within the Nyeland acres tract similar to the subject. Comp six is an active listing and reflects the current market trends supporting the final opinion of value. Days on market are typically under three months and sales to list price ratios are at 100%, meaning buyers are paying full price for homes. The range of adjusted values is from $307,500 to $393,500. The lower mid range of value was chosen due to the condition and quality of the interior of the subject. The bottom range was used as the home is a modular home. The across the board quality adjustments were due to the subject being a manufactured home opposed to the rest of the stick built ranch style homes which offer superior quality overall.

**Cost Approach Comments**
IF used the replacement cost of the subject site & building improvements are based on Marshall and Swift Valuation Service, a nationally recognized cost service. Where and if appropriate, we have used local cost data to supplement the Marshall and Swift data.
External Obsolescence is due to circumstances outside the property itself, such as industry, demographic and economic conditions. This type of depreciation is rarely curable.

SUBJECT PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Client:  Anthony De La Torre | File No.:  001724 |
| Property Address: 3728 Orange Drive | Case No.: |
| City: Oxnard | State: CA    Zip: 93036 |



FRONT VIEW OF
SUBJECT PROPERTY



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE

| Client:  Anthony De La Torre | | File No.:  001724 |
|---|---|---|
| Property Address: 3728 Orange Drive | | Case No.: |
| City: Oxnard | State: CA | Zip: 93036 |



Carport



Bedroom



Bedroom

| Client:    Anthony De La Torre | | File No.:    001724 | |
| Property Address: 3728 Orange Drive | | Case No.: | |
| City: Oxnard | | State: CA | Zip: 93036 |



Bathroom



Worn vinyl flooring



Dining room

| Client: | Anthony De La Torre | | File No.: 001724 |
| Property Address: 3728 Orange Drive | | Case No.: | |
| City: Oxnard | | State: CA | Zip: 93036 |



Kitchen



Bedroom



Bathroom

FLOORPLAN SKETCH

| | |
|---|---|
| Client:  Anthony De La Torre | File No.:   001724 |
| Property Address: 3728 Orange Drive | Case No.: |
| City: Oxnard | State: CA      Zip: 93036 |



PLAT MAP

| Client: Anthony De La Torre | | File No.: 001724 |
| Property Address: 3728 Orange Drive | | Case No.: |
| City: Oxnard | State: CA | Zip: 93036 |

FLOOD MAP

| Client:  Anthony De La Torre | File No.:  001724 |
| Property Address: 3728 Orange Drive | Case No.: |
| City: Oxnard | State: CA          Zip: 93036 |



Subject
3728 Orange Dr
Oxnard, CA  93036

**FLOOD INFORMATION**

Community: **VENTURA COUNTY**

Property is NOT in a FEMA Special Flood Hazard Area

Map Number: **06111C0910E**

Panel: **0910E**

Zone: **X**

Map Date: **01-20-2010**

FIPS: **06111**

Source: **FEMA DFIRM**

**LEGEND**

= FEMA Special Flood Hazard Area – High Risk

= Moderate and Minimal Risk Areas

Road View:

= Forest          = Water

Sky Flood™

No representations or warranties to any party concerning the content, accuracy or completeness of this flood report, including any warranty of merchantability or fitness for a particular purpose is implied or provided. Vertical scaling factors differ between map layers and are separate from flood zone information at market location. No liability is accepted to any third party for anyone or misuse of this flood map or its data.

Pmappraisal4u@aol.com

LOCATION MAP

| Client: Anthony De La Torre | | File No.: 001724 | |
|---|---|---|---|
| Property Address: 3728 Orange Drive | | Case No.: | |
| City: Oxnard | | State: CA | Zip: 93036 |

Comparable Sale 6
2686 Balboa Street
Oxnard CA 93036
1.96 miles NW

Comparable Sale 5
732 Walnut Drive
Oxnard CA 93036
1.81 miles NW

Comparable Sale 1
1114 Orange Drive
Oxnard CA 93036
1.62 miles NW

Comparable Sale 3
3671 Orange Drive
Oxnard CA 93036
0.06 miles NW

Comparable Sale 2
2614 Balboa Street
Oxnard CA 93036
1.99 miles NW

Comparable Sale 4
3465 Nyeland Avenue
Oxnard CA 93036
0.31 miles SW

Subject
3728 Orange Drive
Oxnard, CA 93036

Map data ©2015 Google

Pmappraisal4u@aol.com

Arial View of Subject and Surrounding Neighborhood

| Client: Anthony De La Torre | | File No.: 001724 | |
|---|---|---|---|
| Property Address: 3728 Orange Drive | | Case No.: | |
| City: Oxnard | State: CA | | Zip: 93036 |



Subject
3728 Orange Drive
Oxnard, CA 93036

Pmappraisal4u@aol.com

| Client: Anthony De La Torre | File No.: 001724 | |
| --- | --- | --- |
| Property Address: 3728 Orange Drive | Case No.: | |
| City: Oxnard | State: CA | Zip: 93036 |



Business, Consumer Services & Housing Agency
BUREAU OF REAL ESTATE APPRAISERS
REAL ESTATE APPRAISER LICENSE

Patrick J. McVicker

has successfully met the requirements for a license as a residential real estate appraiser in this State of California and is therefore, entitled to use the title:

"Certified Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers Licensing and Certification Law

BREA APPRAISER IDENTIFICATION NUMBER:    AR 029525

Effective Date:    June 14, 2017
Date Expires:

Jim Martin, Chief BREA

3021245

# EXHIBIT B

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>**Antonio Gabriel De La Torre** | Case Number:<br>**9:15-BK-11231-PC** | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>**PENNYMAC HOLDINGS, LLC, BY PENNYMAC LOAN SERVICES, LLC., ITS SERVICING AGENT** | **COURT USE ONLY** |
|---|---|
| Name and address where notices should be sent:<br>PENNYMAC LOAN SERVICES, LLC<br>6101 CONDOR DRIVE<br>SUITE #310<br>MOORPARK, CA 93021<br><br>Telephone number: (404) 994-7400 | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>PENNYMAC<br>PO BOX 30597<br>LOS ANGELES, CA 90030-0597<br><br>Telephone number : (404) 994-7400 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |

| 1. Amount of Claim at Time Case Filed: | $203,022.97* | *This figure cannot be relied upon as a payoff statement. |
|---|---|---|

If all or part of your claim is secured, complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

| 2. Basis for Claim: <u>Money Loaned/Real Estate Mortgage</u><br>(See instruction #2) |
|---|

| 3. Last four digits of any number by which creditor identifies debtor:<br>8 1 4 6 | 3a. Debtor may have scheduled account as:<br><br>_____.<br>(See instruction #3a) | 3b. Uniform Code Identifier (optional):<br><br><br>(See instruction #3b) |
|---|---|---|

| 4. Secured Claim (See instruction #4)<br>Check the appropriate box if your claim is secured by a lien on property or a right of Setoff, attach required redacted documents, and provide the requested information.<br><br>Nature of property or right of setoff: ☒ Real Estate ☐ Motor Vehicle ☐ Other<br>Describe:<u>3728 Orange Drive  Oxnard CA 93030</u><br><br>Value of Property: $_____<br><br>Annual Interest Rate <u>5.000000</u>%  ☒ Fixed or  ☐ Variable<br>(when case was filed) | Amount of arrearage and other charges as of time case filed included in secured claim, if any:<br><br>$39,250.26<br><br>Basis for perfection: <u>Recorded Deed of Trust</u><br><br>**Amount of Secured Claim:**   $203,022.97*<br><br>**Amount Unsecured:**   $_____ |
|---|---|

| 5. Amount of claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls into one of the following categories, check the box specifying the priority and state the amount. |
|---|

| ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B) | ☐ Wages, salaries, or commissions (up to $12,475*), earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4). | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).<br>**Amount entitled to priority:** |
|---|---|---|
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7). | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8). | $_____<br>☐ Other-Specify applicable paragraph of 11 U.S.C. §507 (a)(___). |

*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6) |
|---|

B 10 (Official Form 10) (04/13)

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, <u>or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A).</u> If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. <u>If the claim is secured by debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim.</u> *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the Appropriate box:

☐ I am the creditor.     ☒ I am the creditor's authorized agent.     ☐ I am the trustee, or the debtor or their authorized agent. (See Bankruptcy Rule 3004.)     ☐ I am a guarantor, surety, indorser, or other co-debtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:    Josephine E. Salmon
Title:    Attorney
Company:    Aldridge Pite LLP
Address and telephone number (if different from notice address above):
15 Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA  30305
Email Address: jsalmon@aldridgepite.com

/s/ Josephine E. Salmon  (SBN 206167)   9/17/2015
(Signature)          (Date)
Attorney for Creditor

Telephone number: (404) 994-7400

---

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10A (Attachment A)(12/11)

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Antonio Gabriel De La Torre | Case number: | 9:15-bk-11231-PC |
| Name of creditor: | PennyMac Holdings, LLC, BY PENNYMAC LOAN SERVICES, LLC., ITS SERVICING AGENT | Last four digits of any number you use to identify the debtor's account: | 8 1 4 6 |

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

| | | | | |
|---|---|---|---|---|
| 1. Principal due | | | | $175,263.70 |

| 2. Interest due | Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount | |
|---|---|---|---|---|---|
| | 5.000% | 10/01/2013 | 06/12/2015 | $14,885.41 | |
| | Total interest due as of the petition date | | | $14,885.41 | Copy total here | $14,885.41 |
| | Deferred Amount (if any) | | | | $0.00 |
| | Escrow Advance Balance | | | | $5,427.32 |

| | |
|---|---|
| 3. Total principal and interest due, plus advances, minus credits, if any. | $195,576.43 |

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included except for Line 13, in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| | Description | Dates Incurred | | Amount |
|---|---|---|---|---|
| 1. | Late charges | See Attachment B | (1) | $867.44 |
| 2. | Non-Sufficient funds (NSF) fees | " | (2) | $0.00 |
| 3. | Attorney's fees | " | (3) | $1,068.75 |
| 4. | Filing fees and court costs | " | (4) | $3,731.43 |
| 5. | Advertisement costs | " | (5) | $1,256.92 |
| 6. | Sheriff/auctioneer fees | " | (6) | $0.00 |
| 7. | Title costs | " | (7) | $480.00 |
| 8. | Recording fees | " | (8) | $0.00 |
| 9. | Appraisal/broker's price opinion fees | " | (9) | $0.00 |
| 10. | Property inspection fees | " | (10) | $42.00 |
| 11. | Tax advances (non-escrow) | " | (11) | $0.00 |
| 12. | Insurance advances (non-escrow) | " | (12) | $0.00 |
| 13. | Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | " | (13) | $1,026.45 |
| 14. | Property preservation expenses. Specify:_____ | " | (14) | $0.00 |
| 15. | Other. Specify: See Attachment B | " | (15) | $0.00 |
| 16. | Other. Specify:_____ | " | (16) | |
| 17. | Other. Specify:_____ | | (17) | |
| 18. | Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $8,472.99 |

B 10A (Attachment A)(12/11)

Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

☐   No

☒   Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable non-bankruptcy law.

| | | | | | |
|---|---|---|---|---|---|
| 1. | **Installment payments due** | Date last prepetition payment received by creditor | 01/15/2013 | | |
| | | Number of installment payments due | 20 | | |
| 2. | **Amount of installment payments due** | | | | |
| | | 8 installment(s) @ | $1,534.79 | | |
| | | 11 installment(s) @ | $1,528.94 | | |
| | | 1 installment(s) @ | $1,680.61 | | |
| | | Total installment payments due as of the petition date | $30,777.27 | Copy total here (2) | $30,777.27 |
| 3. | **Calculation of cure amount** | <u>Add</u> total prepetition fees, expenses, and charges | | Copy total from + Part 2 here | $8,472.99 |
| | | <u>Add</u> total of postpetition payments | | + | $0.00 |
| | | <u>Add</u> total of postpetition attorney fees/costs | | + | $0.00 |
| | | <u>Subtract</u> total of unapplied funds (funds received but not credited to account) | | - | $0.00 |
| | | <u>Subtract</u> amounts for which debtor is entitled to a refund | | - | |
| | | Total amount necessary to cure default as of the petition date | | (3) | $39,250.26 |

Copy total onto Item 4 of Proof of Claim form

Effective 9/1/2015 the total ongoing mortgage payment amount will be $1,577.97.

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | : Case No.: 9:15-bk-11231-PC |
| | : |
| Antonio Gabriel De La Torre | : Chapter: 13 |
| | : |
| | : Judge: Peter Carroll |
| | : |
| Debtor(s) | : |
| | : |
| | : |

### Attachment B

DETAILED ITEMIZATION OF ARREARS

| Payments | From | To | Amount | Total |
|---|---|---|---|---|
| Payment | 11/1/2013 | 6/1/2014 | $1,534.79 | $12,278.32 |
| Payment | 7/1/2014 | 5/1/2015 | $1,528.94 | $16,818.34 |
| Payment | 6/1/2015 | 6/1/2015 | $1,680.61 | $1,680.61 |

List of Fees and Costs

| Fee/Cost Type | Description | Date | Amount |
|---|---|---|---|
| Advertisement Costs | | 3/12/2015 | 1,256.92 |
| Escrow Shortage | | | 1,026.45 |
| Foreclosure Costs | | 1/29/2015 | 62.00 |
| Foreclosure Costs | | 1/29/2015 | 1,256.92 |
| Foreclosure Costs | Sale Costs | 1/29/2015 | 120.00 |
| Foreclosure Costs | | 1/29/2015 | 1,336.80 |
| Foreclosure Costs | | 3/4/2015 | 30.00 |
| Foreclosure Costs | Statutory Mailings | 3/5/2015 | 805.71 |
| Foreclosure Costs | Posting | 3/12/2015 | 120.00 |
| Foreclosure Fees | | 1/29/2015 | 1,068.75 |
| Inspection Fees | | 4/13/2015 | 15.00 |
| Inspection Fees | | 5/7/2015 | 15.00 |
| Inspection Fees | | 6/8/2015 | 12.00 |
| Title Costs | | 1/29/2015 | 480.00 |
| Late Charges | | 2/16/2013 | 61.96 |
| Late Charges | | 3/16/2013 | 61.96 |
| Late Charges | | 4/16/2013 | 61.69 |
| Late Charges | | 5/16/2013 | 61.69 |
| Late Charges | | 6/17/2013 | 61.69 |
| Late Charges | | 7/16/2013 | 61.69 |
| Late Charges | | 8/16/2013 | 61.69 |
| Late Charges | | 10/31/2013 | 1.89 |
| Late Charges | | 1/16/2014 | 61.96 |
| Late Charges | | 2/18/2014 | 61.96 |
| Late Charges | | 3/17/2014 | 61.69 |
| Late Charges | | 4/16/2014 | 61.69 |

| Late Charges | | 5/16/2014 | 61.96 |
| Late Charges | | 6/16/2014 | 61.96 |
| Late Charges | | 7/16/2014 | 61.96 |
| | | **Total Arrears:** | **$39,250.26** |

Effective 9/1/2015 the total ongoing mortgage payment amount will be $1,577.97.

Please send all correspondence and court pleadings to ALDRIDGE PITE LLP, 15 Piedmont Center, 3575 Piedmont Road, N.E., Suite 500, Atlanta, GA, 30305. Reference Matter No.: 1120-16578A.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*): Proof of Claim will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 17, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR DEBTOR:**
M. Jonathan Hayes  jhayes@srhlawfirm.com

**TRUSTEE:**
 Elizabeth F. Rojas - cacb_ecf_sv@ch13wla.com

**U.S. TRUSTEE:**
ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) September 17, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR:**
 Antonio Gabriel De La Torre
 2430 Lobelia Drive
 Oxnard, CA 93036

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9.17.15 | Heather Graham | /s/ Heather Graham |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Recording Requested By:
PeirsonPatterson, LLP
And When Recorded Mail To:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

Ventura County Clerk and Recorder
MARK A. LUNN
03/12/2015 11:18:00 AM
916752 $30.00 CE

Electronically Recorded in Official Records,
County of Ventura

————— ....[Space Above This Line For Recording Data]—— - -

Recording Requested by: SimpliFile

# CALIFORNIA ASSIGNMENT OF DEED OF TRUST

For Value Received, JPMorgan Chase Bank, National Association, the undersigned holder of a Deed of Trust (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto PennyMac Holdings, LLC, (herein "Assignee"), whose address is 6101 Condor Drive, Suite 310, Moorpark, CA 93021, all beneficial interest under a certain Deed of Trust dated May 16, 2003 and recorded on May 30, 2003, made and executed by TONY G. DE LA TORRE, to CALIFORNIA RECONVEYANCE COMPANY, Trustee, upon the following described property situated in VENTURA County, State of California.
Property Address: 3728 ORANGE DRIVE, OXNARD, CA 93030

See exhibit "A" attached hereto and made a part hereof.

such Deed of Trust having been given to secure payment of  Two Hundred Twenty  Thousand  and 00/100ths ($220,000.00), which Deed of Trust is of record in Book, Volume, or Liber No. N/A, at Page N/A (or as No. 2003-0179998-00), in the Office of County Recorder of VENTURA County, State of California.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on
_02/26/2015_ .



Assignor:
JPMorgan Chase Bank, National Association

By: _Melinda J. Craft_
Melinda J. Craft

Its:    **Vice President**

California Assignment of Deed of Trust
JPMorgan Chase Bank N.A. Project W3044          Page 1 of 2          L73108CA 01/12 Rev. 02-14

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

State of Louisiana                              §
                                                §
Parish of Ouachita                              §

On this day, **02/26/2015** before me **Angela Ruth Payne** appeared _____ Melinda J. Craft _____, to me personally known, who, being by me duly sworn did say that he/she is the **Vice President** _____, of JPMorgan Chase Bank, National Association, and that the seal affixed to said instrument is the seal of said entity and that the instrument was signed in behalf of the said entity by authority of its Board of Directors or Trustees and that _____ Melinda J. Craft _____ acknowledged the instrument to be the free act and deed of the said entity.

ANGELA RUTH PAYNE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 60422

_____
Notary Public

*Angela Ruth Payne*
Printed Name

(Seal)                           My Commission Expires        *Lifetime*

California Assignment of Deed of Trust
JPMorgan Chase Bank N.A. Project W3344        Page 2 of 2        L7310BCA 01/12 Rev. 02/14

Exhibit "A"

A PART OF LOT 64 OF THE RANCHO SANTA CLARA DEL NORTE, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, IN BOOK 3, PAGE 26 OF MAPS, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A 2" X 2" REDWOOD STAKE FROM WHICH A 2" X 2" REDWOOD STAKE SET IN A LINE BETWEEN LOTS 04 AND 65 OF RANCHO SANTA CLARA DEL NORTH, BEARS NORTH 50° 20' WEST 659.86 FEET DISTANT, AND FROM LAST DESCRIBED POINT A 2-INCH IRON PIPE SET IN THE NORTHERLY LINE OF THE "OLD CONEJO ROAD" AT THE CORNER COMMON TO LOTS 64 AND 65, BEARS SOUTH 30° 40' WEST 2041.40 FEET DISTANT; THENCE FROM SAID POINT OF BEGINNING.

1ST:  NORTH 50° 20' WEST 309.93 FEET TO A 2" X 2" REDWOOD STAKE, THENCE AT RIGHT ANGLES,

2ND:  NORTH 39° 40' EAST 140.55 FEET TO A 2" X 2" REDWOOD STAKE, THENCE AT RIGHT ANGLES,

3RD:  SOUTH 50° 20' EAST 309.93 FEET TO A 2" X 2" REDWOOD STAKE, THENCE AT RIGHT ANGLES,

4TH:  SOUTH 39° 40' WEST 140.55 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THAT PORTION OF SAID LAND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE MOST WESTERLY CORNER OF THE ABOVE DESCRIBED LAND, SAID POINT BEING THE SOUTHEASTERLY LINE OF ORANGE DRIVE; THENCE FROM SAID POINT OF BEGINNING ALONG THE SOUTHEASTERLY LINE OF SAID ORANGE DRIVE,

1ST:  NORTH 39° 40' EAST 126.55 FEET TO A POINT; THENCE,

2ND:  SOUTH 50° 20' EAST 126.13 FEET TO A POINT; THENCE

3RD:  SOUTH 39° 40' WEST 126.55 FEET TO A POINT IN THE SOUTHWESTERLY LINE OF THE ABOVE DESCRIBED PARCEL; THENCE ALONG SAID SOUTHWESTERLY LINE,

4TH:  NORTH 50° 20' WEST 126.13 FEET TO THE POINT OF BEGINNING.

Page 1 of 1

Consent:

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.
[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



Ventura County Clerk and Recorder
MARK A LUNN
02/04/2014 03:22:33 PM
730S12 $26.00 VA

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR)**, by these presents does convey, grant, assign, transfer and set over the described Deed of Trust without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **TONY G. DE LA TORRE** and recorded on 05/30/2003 as Instrument # 2003-0179998-00, in Book n/a, Page n/a in the office of the VENTURA County Recorder, CA.

Property more commonly known as: **3728 ORANGE DRIVE, OXNARD, CA 93030.**

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

IN WITNESS WHEREOF, this Assignment is executed on _01 / 24 / 2014_ (MM/DD/YYYY)
**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact**
POA RECORDED: 10/30/2012 DOC#: 20121030-00193623-0

By _____
Sheshila Knox
Vice President

## ACKNOWLEDGEMENT

STATE OF LOUISIANA
PARISH OF OUACHITA
On _01 / 24 / 2014_ (MM/DD/YYYY), before me appeared Sheshila Knox _____, to me personally known, who did say that he/she/they is/are the _Vice President_ of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Angelo Ruth Payne
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

ANGELA RUTH PAYNE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID# 60422

Document Prepared By: E.Lance/NTC 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Page 1 of 1

RECORDING REQUESTED BY:
AMERICAN TITLE

AFTER RECORDING RETURN TO:
Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

Ventura County Recorder
PHILIP J SCHMIT
DOC- 2003-0179998-00
Acct 1-American Title Company
Friday, MAY 30, 2003 08:00:00
Ttl Pd   $75.00      Nbr-0001188839
                              TAL/RL/1-24

## SECURITY INSTRUMENT COVER SHEET

Please print or type information
Document Title(s) (or transactions contained therein):

1. Deed of Trust

Grantor/Trustor/Mortgagor(s) (Last name first, then first name and initials)

1. TONY G. DE LA TORRE
2.
3.
4.
5. ☐  Additional names on page _____ of document.

Grantee/Beneficiary/Mortgagee(s)

1. Washington Mutual Bank, FA

Legal Description (abbreviated: i.e. lot, block, plat or section, township, range)

SEE ATTACHED EXHIBIT 'A'

☐   Additional legal is on page _____ of document.

Assessor's Property Tax Parcel/Account Number(s)

1.  ▓▓▓▓▓▓▓▓        2.

3.                          4.

This document prepared by.

LEANDRA HENNE
20001 PRAIRIE STREET. BLDG 17, 2ND FL
CHATSWORTH, CA 91311

AFTER RECORDING RETURN TO:

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

———————————— [Space Above This Line For Recording Data] ————————————

AMERICAN TITLE COMPANY 5334431

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated _____ May 16, 2003 _____, together with all Riders to this document.
(B) "Borrower" is _ TONY G. DE LA TORRE, A SINGLE MAN _____

Borrower is the trustor under this Security Instrument.
(C) "Lender" is _____ Washington Mutual Bank, FA, a federal association _____
Lender is a _____ Bank _____ organized and existing under the laws of
_ United States of America _____, Lender's address is
_____ 400 East Main Street Stockton, CA 95290 _____.
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is _____ CALIFORNIA RECONVEYANCE COMPANY _____
(E) "Note" means the promissory note signed by Borrower and dated _____ May 16, 2003 _____.
The Note states that Borrower owes Lender _ Two Hundred Twenty Thousand & 00/100 _

Dollars (U.S. $ _ 220,000.00 _____ ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than _____ June 1, 2033 _
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

CALIFORNIA
32838 (05-01)                              Page 1 of 17



(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable).

[X] Adjustable Rate Rider ☐ Condominium Rider ☐ 1-4 Family Rider
☐ Graduated Payment Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider
☐ Other(s) (specify)

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C F R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably

CALIFORNIA
22316 (06-01)

Page 2 of 17





grants and conveys to Trustee, in trust, with power of sale, the following described property located in ___Ventura_____ County, California:

SEE ATTACHED EXHIBIT "A"

which currently has the address of _1728 ORANGE DRIVE_____,
[Street]

____OXNARD____ , California ___93030___ ("Property Address"):
[City]               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows.

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic

CALIFORNIA
32838 09-011

Page 3 of 17

Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke

CALIFORNIA
3.8826 (03-01)                         Page 4 of 17

the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby waives, to the full extent allowed by law, all of Borrower's rights to receive any and all of such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in

CALIFORNIA
12138 (05-04)

connection with any damage to such property, resulting from any cause or causes whatsoever, including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, or remove or demolish any building thereon, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in good condition and repair in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property in good and workmanlike manner if damaged to avoid further

CALIFORNIA
32619 (06 01)

deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient and workmanlike manner in accordance with all applicable laws.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender or Trustee, (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to any interest in the acquisition or ownership of the Property. Lender and Trustee shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) or any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender, payable as a result of any damage to or otherwise relating to the Property or any interest therein. Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting

CALIFORNIA
32938 (06-01)

Page 8 of 17



and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss  reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender for any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage

insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is

CALIFORNIA
37838 (05-01)

Page 10 of 17

Case 9:15-bk-11231-PC    Claim 9    Filed 09/18/15    Desc Main Document    Page 23 of
50

less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgement, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgement, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12. Borrower Not Released; Forbearance By Lender Not a Waiver. This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any Successor in interest to Borrower and Lender. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy. No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by

CALIFORNIA
33838 /06-011                              Page 11 of 17

Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Borrower shall pay such other charges as Lender may deem reasonable for services rendered by Lender and furnished at the request of Borrower, any Successor in interest to Borrower or any agent of Borrower. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note.) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the

CALIFORNIA
32638-06-911

conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgement enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument,

CALIFORNIA
329.38 (09-01)

Page 13 of 17

and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

CALIFORNIA
3.7838 (05-01)

Page 14 of 17



**NON-UNIFORM COVENANTS** Borrower and Lender further covenant and agree as follows.

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Borrower or any successor in interest to Borrower files (or has filed against Borrower or any successor in interest to Borrower) a bankruptcy petition under Title II or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court shall be paid to Lender on post-petition arrears.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the of the occurrence of and event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Lender or the Trustee (whether or not the Trustee is affiliated with Lender) may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

CALIFORNIA
3.7038 (05-01)

Page 16 of 17

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution. Trustee may destroy the Note and the Security Instrument three (3) years after issuance of a full reconveyance or release (unless directed in such request to retain them).

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

x _Tony G De La Tore_____

TONY G. DE LA TORRE

CALIFORNIA
32838 (05-01)

Page 16 of 17

———————————— (Space Below This Line For Acknowledgment) ————————————

State of CALIFORNIA                )
                                   ) SS.
County of VENTURR                  )

On May 21, 2003 20 A.M., before me, Dave M. Malagon,
a Notary Public in and for the State of
California, personally appeared Tony G. De La Torre

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

Signature _Dave M. Malagon_

Notary Public in and for the State of California

DAVE M. MALACON
Commission #1263146
Notary Public - California
Ventura County
My Comm Expires May 8, 2004

**ADJUSTABLE RATE RIDER**
(12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this __16th__ day of __May, 2003__,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
__Washington Mutual Bank, FA__ (the "Lender") of the same date and
covering the property described in the Security Instrument and located at

__3728 ORANGE DRIVE, OXNARD, CA 93030__
(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT  MY MONTHLY PAYMENT INCREASES WILL
HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY
BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE
THAN __125%__ OF THE ORIGINAL AMOUNT (OR $ __275,000.00__ ).
MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND
RIDER  A BALLOON PAYMENT MAY BE DUE AT MATURITY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid.
Up until the first day of the calendar month that immediately precedes the first payment due date
set forth in Section 3 of the Note, I will pay interest at a yearly rate of __4.247__ %.  Thereafter
until the first Change Date (as defined in Section 4 of the Note) I will pay interest at a yearly rate
of __1.950__ %.  The interest rate I will pay will thereafter change in accordance with Section 4
of the Note
    Section 4 of the Note provides for changes in the interest rate and monthly payment as
follows:

32843 (11-01)                          Page 1 of 5

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the ___1st___ day of ___July, 2003___, and on that day every month thereafter   Each such day is called a "Change Date".

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___Two & Five-Tenths___ percentage points _2.500_ % ("Margin") to Current Index. The Note Holder will then round the result of this addition to the nearest one thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined   The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). The difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than _9.950_ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer

### (E) Payment Change Dates

Effective every year commencing ___July 1, 2004___, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the

3.38-43 (11-01)                 Page 2 of 5

amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

(F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a Principal reduction of the Note.

(H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___125%___ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that ___125%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

(I) Required Full Monthly Payment

On the ___FIFTH___ anniversary of the due date of the first monthly payment, and on that same day every ___FIFTH___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

(J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my

32843 (11-01)                                    Page 3 of 5

monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement , the intent of which is the transfer of title by Borrower at a future date to a purchaser.  If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the

32843 (11-01)                                          Page 4 of 5





transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

x _Tony G De La Torre_____

TONY G. DE LA TORRE

32643 (11-011)                    Page 5 of 5








## EXHIBIT "A"

A PART OF LOT 64 OF THE RANCHO SANTA CLARA DEL NORTE, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, IN BOOK 3, PAGE 26 OF MAPS, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS

BEGINNING AT A 2" X 2" REDWOOD STAKE FROM WHICH A 2" X 2" REDWOOD STAKE SET IN A LINE BETWEEN LOTS 64 AND 65 OF RANCHO SANTA CLARA DEL NORTH, BEARS NORTH 50° 20' WEST 659 80 FEET DISTANT, AND FROM LAST DESCRIBED POINT A 2-INCH IRON PIPE SET IN THE NORTHERLY LINE OF THE "OLD CONEJO ROAD" AT THE CORNER COMMON TO LOTS 64 AND 65, BEARS SOUTH 39° 40' WEST 2041 40 FEET DISTANT, THENCE FROM SAID POINT OF BEGINNING

1ST   NORTH 50° 20' WEST 309 93 FEET TO A 2" X 2" REDWOOD STAKE, THENCE AT RIGHT ANGLES.

2ND   NORTH 39° 40' EAST 140 55 FEET TO A 2" X 2" REDWOOD STAKE, THENCE AT RIGHT ANGLES,

3RD   SOUTH 50° 20' EAST 309 93 FEET TO A 2" X 2" REDWOOD STAKE, THENCE AT RIGHT ANGLES,

4TH   SOUTH 39° 40' WEST 140 55 FEET TO THE POINT OF BEGINNING

EXCEPT THEREFROM THAT PORTION OF SAID LAND DESCRIBED AS FOLLOWS

BEGINNING AT A POINT IN THE MOST WESTERLY CORNER OF THE ABOVE DESCRIBED LAND, SAID POINT BEING THE SOUTHEASTERLY LINE OF ORANGE DRIVE, THENCE FROM SAID POINT OF BEGINNING ALONG THE SOUTHEASTERLY LINE OF SAID ORANGE DRIVE.

1ST   NORTH 39° 40' EAST 126 55 FEET TO A POINT, THENCE,

2ND   SOUTH 50° 20' EAST 126 13 FEET TO A POINT, THENCE

3RD   SOUTH 39° 40' WEST 126 55 FEET TO A POINT IN THE SOUTHWESTERLY LINE OF THE ABOVE DESCRIBED PARCEL, THENCE ALONG SAID SOUTHWESTERLY LINE.

4TH   NORTH 50° 20' WEST 126 13 FEET TO THE POINT OF BEGINNING

## ADJUSTABLE RATE NOTE
### (12-MTA Index - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN ___125%___ OF THE ORIGINAL AMOUNT (OR $___275,000.00___). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

_____May 16, 2003_____                    _____VENTURA_____    ___California___
                                                    (City)                        (State)

_____3728 ORANGE DRIVE, OXNARD, CA 93030_____
                        (Property Address)

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ ___220,000.00___ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ___Washington Mutual Bank, FA___. I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST
Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of _4.247_ %. Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of _1.950_ %. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
#### (A) Time and Place of Payments
I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.
I will make my monthly payments on ___1st___ day of each month beginning on ___July, 2003___, I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on ___June 1, 2033___, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".
I will make my monthly payments at ___9451 CORBIN AVE, NORTHRIDGE, CA 91324___ _____, or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments
Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ ___807.67___, unless adjusted at an earlier time under Section 4(H) of this Note.



**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the ___1st___ day of ___July, 2003___, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___Two & Five-Tenths___ percentage points ___2.500___ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than ___Nine & Ninety-Five-Hundredths___ percentage points ___9.950___ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing ___July 1, 2004___, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.



**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will ad the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to ___125%___ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that ___125%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the ___FIFTH___ anniversary of the due date of the first monthly payment, and on that same day every ___FIFTH___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount



necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Miscellaneous Fees: I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $__15.00__. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of __Fifteen__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once of each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.



## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the   Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver

to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

x _____
TONY G. DE LA TORRE

Pay to the order of

_____
Without Recourse
Washington Mutual Bank, FA

Jess Almanza, AVP

32859 (11-01)                          Page G of G

Chase Fulfillment Services
710 S Ash St, Ste 200
Mail Stop - OptArm Mod CS -    07
Glendale, CO 80246-1531

**CHASE ○**

February 4, 2011

**TONY G DE LA TORRE**
**2430 LOBELIA DR**
**OXNARD, CALIFORNIA 930366260**

**Loan Modification Agreement**

Property Address:    **3728 ORANGE DR**
                              **OXNARD, CALIFORNIA 93030**

Dear TONY G DE LA TORRE:

We are writing to let you know that you have completed all the requirements for a permanent mortgage modification.

We have enclosed a signed copy of the Modification Agreement for your records.

If you have any questions, please call us at the telephone number below.

Sincerely,

Chase Home Lending
(866) 566-6459
www.chase.com

Enclosure

1. Signed Final Loan Modification Agreement

**CHASE O**

## LOAN MODIFICATION AGREEMENT

Borrower ("I")[1]: Tony G De La Torre
Lender ("Lender"): JPMorgan Chase Bank, N.A.

Property Address ("Property"):
   3728 Orange Dr
   Oxnard, CA 93030

If my representations in Section 1 continue to be true in all material respects then the provisions of Section 2 of this Loan Modification Agreement ("Agreement") will, as set forth in Section 2, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as may previously have been modified or amended, are referred to as the "Loan Documents."

I acknowledge and agree that this Agreement will not take effect until I have returned any required documents requested by Lender, and the Lender has signed a counterpart of this Agreement and returns a copy to me. Until this Agreement is in effect, the terms of the Loan Documents, and any rights and obligations of the parties arising thereunder, remain unchanged and in effect. I further acknowledge and agree that Lender may refuse to accept this Agreement for any reason in its sole discretion.

1. **My Representations.** I represent to the Lender and agree:
   A. My account is currently due for January 1, 2011.
   B. Assuming I make all prior minimum payments that are due, as of the Modification Effective Date I will owe the total amount of $190,037.79 which is unpaid principal (the "Principal Balance").
   C. The current Maturity Date is June 1, 2033.
   D. The Property is neither in a state of disrepair, nor condemned;
   E. There has been no change in the ownership of the Property since I signed the Loan Documents;
   F. I am not a party to any litigation involving the Loan Documents;
   G. All documents and information I provide pursuant to this Agreement are true and correct.

2. **The Modification.** If I comply with the terms of this Agreement, and once this Agreement is accepted by Lender the Loan Documents will be modified as of March 1, 2011 (the "Modification Effective Date") as follows:
   A. The Maturity Date will be August 1, 2031 (the "Modification Maturity Date").
   B. The Principal Balance of my Note on the Modification Effective Date will remain unchanged in the amount of $190,037.79.
   C. The modified interest rate of 5.000% will begin to accrue on the Principal Balance as of March 1, 2011. The first monthly principal and interest payment of $1,242.20 on the Principal Balance will be due on April 1, 2011 and on the same date each month thereafter until the Modification Maturity Date.
   D. I will be in default if I do not (1) pay the full amount of a monthly payment on the date it is due, or (2) comply with the terms of the Loan Documents, as modified by this Agreement.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

E. I agree to pay in full any other amounts still owed under the Loan Documents by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.I below, or the Modification Maturity Date.

F. The above terms in Section 2 shall supersede any provisions to the contrary in the Loan Documents, including but not limited to provisions for any adjustable or step Interest Rate.

3. Additional Agreements. I agree to the following:

A. That all persons who signed the Loan Documents have signed this Agreement.

B. That this Agreement shall supersede the terms of any modification, forbearance, or workout plan, if any, that I previously entered into with the Lender.

C. To comply with all covenants, agreements, and requirements of the Loan Documents, except to the extent that they are modified by this Agreement, including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my loan. This Agreement does not waive future escrow requirements. If the Loan includes escrows for collection of tax and insurance premiums, this collection will continue for the life of the Loan.

D. That I have no right of set-off or counterclaim, or any defense to the obligations under the Loan Documents.

E. To the extent this Agreement provides for the forgiveness of a portion of the principal balance of the Loan, I agree that I am responsible for any taxes imposed on account of such forgiveness.

F. Lender may report this Agreement and the terms hereof, including any principal forgiveness, to the credit bureaus. I acknowledge this may have an adverse impact to my credit report depending on how the credit bureaus use this information.

G. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

H. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

I. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

J. That, as of the Modification Effective Date; a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

K. If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within 10 days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

reasonably sustains as a result of my failure, including reasonable costs and attorney's fees incurred in enforcing this provision. This Agreement may be executed in multiple counterparts.

L. All payment amounts and loan balances specified in this Agreement assume that payments due on or before the Modification Effective Date will be made as scheduled. Any additional principal payments made prior to the Modification Effective Date will be applied to reduce the Principal Balance prior to the modification, but will not reduce the amount of the new monthly principal and interest payment.

M. If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

In Witness Whereof, the Lender and I have executed this Agreement.

JPMorgan Chase Bank N.A.

By: _Amber M Routon_

_2.7.2011_

Date

Amber M. Routon
Vice President

Tony G De La Torre                    2/3/11

Date

( 805 ) 889 - 6066
Borrower Phone Number

Anytime
Best time to reach me at this phone number

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**CHASE ◯**

## LOAN MODIFICATION AGREEMENT

Borrower ("I")[1]: Tony G De La Torre
Lender ("Lender"): JPMorgan Chase Bank, N.A.

Property Address ("Property"):
    3728 Orange Dr
    Oxnard, CA 93030

If my representations in Section 1 continue to be true in all material respects then the provisions of Section 2 of this Loan Modification Agreement ("Agreement") will, as set forth in Section 2, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as may previously have been modified or amended, are referred to as the "Loan Documents."

I acknowledge and agree that this Agreement will not take effect until I have returned any required documents requested by Lender, and the Lender has signed a counterpart of this Agreement and returns a copy to me. Until this Agreement is in effect, the terms of the Loan Documents, and any rights and obligations of the parties arising thereunder, remain unchanged and in effect. I further acknowledge and agree that Lender may refuse to accept this Agreement for any reason in its sole discretion.

1. My Representations. I represent to the Lender and agree:
    A. My account is currently due for January 1, 2011.
    B. Assuming I make all prior minimum payments that are due, as of the Modification Effective Date I will owe the total amount of $190,037.79 which is unpaid principal (the "Principal Balance").
    C. The current Maturity Date is June 1, 2033.
    D. The Property is neither in a state of disrepair, nor condemned;
    E. There has been no change in the ownership of the Property since I signed the Loan Documents;
    F. I am not a party to any litigation involving the Loan Documents;
    G. All documents and information I provide pursuant to this Agreement are true and correct.

2. The Modification. If I comply with the terms of this Agreement, and once this Agreement is accepted by Lender the Loan Documents will be modified as of March 1, 2011 (the "Modification Effective Date") as follows:
    A. The Maturity Date will be August 1, 2031 (the "Modification Maturity Date").
    B. The Principal Balance of my Note on the Modification Effective Date will remain unchanged in the amount of $190,037.79.
    C. The modified interest rate of 5.000% will begin to accrue on the Principal Balance as of March 1, 2011. The first monthly principal and interest payment of $1,242.20 on the Principal Balance will be due on April 1, 2011 and on the same date each month thereafter until the Modification Maturity Date.
    D. I will be in default if I do not (1) pay the full amount of a monthly payment on the date it is due, or (2) comply with the terms of the Loan Documents, as modified by this Agreement.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

E.  I agree to pay in full any other amounts still owed under the Loan Documents by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.I below, or the Modification Maturity Date.

F.  The above terms in Section 2 shall supersede any provisions to the contrary in the Loan Documents, including but not limited to provisions for any adjustable or step Interest Rate.

3.  Additional Agreements. I agree to the following:

A.  That all persons who signed the Loan Documents have signed this Agreement.

B.  That this Agreement shall supersede the terms of any modification, forbearance, or workout plan, if any, that I previously entered into with the Lender.

C.  To comply with all covenants, agreements, and requirements of the Loan Documents, except to the extent that they are modified by this Agreement, including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my loan. This Agreement does not waive future escrow requirements. If the Loan includes escrows for collection of tax and insurance premiums, this collection will continue for the life of the Loan.

D.  That I have no right of set-off or counterclaim, or any defense to the obligations under the Loan Documents.

E.  To the extent this Agreement provides for the forgiveness of a portion of the principal balance of the Loan, I agree that I am responsible for any taxes imposed on account of such forgiveness.

F.  Lender may report this Agreement and the terms hereof, including any principal forgiveness, to the credit bureaus. I acknowledge this may have an adverse impact to my credit report depending on how the credit bureaus use this information.

G.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

H.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

I.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

J.  That, as of the Modification Effective Date; a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

K.  If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within 10 days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

reasonably sustains as a result of my failure, including reasonable costs and attorney's fees incurred in enforcing this provision. This Agreement may be executed in multiple counterparts.

L. All payment amounts and loan balances specified in this Agreement assume that payments due on or before the Modification Effective Date will be made as scheduled. Any additional principal payments made prior to the Modification Effective Date will be applied to reduce the Principal Balance prior to the modification, but will not reduce the amount of the new monthly principal and interest payment.

M. If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

In Witness Whereof, the Lender and I have executed this Agreement.

JPMorgan Chase Bank N.A.

By: _Amber M Routon_

_2.7.2011_
Date

Amber M. Routon
Vice President

Tony G De La Torre                    Date

( 805 )  889  -  6066
Borrower Phone Number

Anytime
Best time to reach me at this phone number

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.



PennyMac
P O Box 514387
Los Angeles, CA  90051-4387



1-866-545-9070

06/25/15

TONY G DE LA TORRE
2430 LOBELIA DR
OXNARD CA 93036-6260

## ANNUAL ESCROW  ACCOUNT DISCLOSURE STATEMENT

As you know, we are required to maintain an escrow account which is used to pay your real estate taxes and/or insurance premiums. This account must be analyzed annually to determine whether enough funds are being collected monthly, and whether the account has a shortage or surplus based on the anticipated activity.

PennyMac Loan Services, LLC is a debt collector.  However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is for informational purposes only and is not an attempt to collect a debt against you personally.

### PRESENT  MORTGAGE  PAYMENT

Your present payment consists of: Principal & Interest (P&I)      $1,239.28
                                   Escrow Deposit                   $295.51

**Total Mortgage Payment**                                        **$1,534.79**

### ANTICIPATED  ANNUAL  DISBURSEMENTS

These are the escrow items we anticipate we will collect for or pay on your behalf in the upcoming 12 month period. The dollar amount shown may be the last amount actually paid for that item, or may project the next amount due as defined by Federal Law. Based on these anticipated disbursements, the amount of your escrow deposit is calculated and displayed here.

Bills due in the upcoming year:  COUNTY TAX      $3,561.18
                                 HAZARD INS       $503.09

**Total Anticipated Annual Disbursements:**      **$4,064.27**   One-Twelfth/Monthly Amount:    **$338.69**

### ACCOUNT  HISTORY

The following statement of activity in your escrow account from 06/2015 through 05/2016 displays actual activity as it occurred in your escrow account during that period.  If you received Account Projections with a prior analysis, they are included again here for comparison.

| Month | Payments Projected | Payments Actual | Disbursements Projected | Disbursements Actual | Description | Projected Escrow Account Balance | Actual Escrow Account Balance |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  | Beginning Balance | $1,354.75 | $5,427.32- |
| June | 338.69 | 5,991.67 E |  |  | E | 1,693.44 | 564.35 |
| July | 338.69 | 441.33 E |  |  | E | 2,032.13 | 1,005.68 |
| August | 338.69 | 441.33 E |  |  | E | 2,370.82 | 1,447.01 |
| September | 338.69 |  |  | * |  | 2,709.51 | .00 |
| October | 338.69 |  |  | * |  | 3,048.20 | .00 |
| November | 338.69 |  | 1,780.59 |  | * COUNTY TAXES | 1,606.30 | .00 |
| December | 338.69 |  |  | * |  | 1,944.99 | .00 |
| January | 338.69 |  | 503.09 |  | * HAZARD INS | 1,780.59 | .00 |
| February | 338.69 |  |  | * |  | 2,119.28 | .00 |
| March | 338.69 |  | 1,780.59 |  | * COUNTY TAXES | 677.38 | .00 |
| April | 338.69 |  |  | * |  | 1,016.07 | .00 |
| May | 338.69 |  |  | * |  | 1,354.78 | .00 |

An asterisk (*) beside an amount indicates a difference from projected activity either in the amount or the date. The letter E beside an amount indicates that the payment or disbursement has not yet occurred, but is estimated to occur as shown.

Last year we anticipated that Disbursements would be made from your Escrow Account during the period equaling $4,064.27. Under Federal Law, your lowest monthly balance should not have exceeded $677.38, or 1/6th of total anticipated payments from the account, unless your mortgage contract or State law specifies a lower amount.

Under your mortgage contract and State Law your lowest monthly balance should not have exceeded $677.38.

*** CONTINUED ON REVERSE SIDE ***

PennyMac

### SURPLUS

Customer Loan Number:                              Surplus Amount:      $102.64

Customer Name:   TONY G DE LA TORRE

Due to the delinquent status of your account, however, we will retain your surplus.

Case 9:15-bk-11231-PC    Claim 9    Filed 09/18/15    Desc Main Document    Page 50 of
50
CONTINUATION

## ACCOUNT PROJECTIONS

**Your Projected Escrow Account Balance as of 08/31/15 is $1,447.01.  Your Required Beginning Escrow Balance according to this analysis should be $2,370.82.**

This means you have a Surplus of $102.64.  This surplus must be returned to you unless it is less than $50.00, in which case we have the additional option of keeping it and lowering your monthly payments accordingly.  Due to the delinquent status of your account, however, we will retain your surplus.  Once during this period, your Required Escrow Account Balance should be reduced to $677.38, as shown in March. This amount represents the cushion selected by us as allowed by your mortgage contract, Federal and State Law.

### NEW MORTGAGE PAYMENT

| Your new payment consists of: | Principal & Interest (P&I) | | $1,239.28 |
|---|---|---|---|
| | Escrow Deposit | | $338.69 |
| **New Mortgage Payment** | **Beginning** | **09/01/15** | **$1,577.97** |

Should you have any questions about this Escrow Analysis, please call our Customer Service Department toll-free at 1-866-545-9070.

The following estimate of activity in your escrow account from 09/15 through 08/16 is provided for your information.  All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance.  The Required Escrow Account Balance displays the amount actually required to be on hand as specified by Federal Law, State Law or your mortgage documents, and may include a cushion of up to 1/6th of your Annual Disbursements.  Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

| Month | Anticipated Amount To Escrow | Anticipated Amount From Escrow | Description | Projected Escrow Account Balance | Required Escrow Account Balance |
|---|---|---|---|---|---|
| | | | **Beginning Balance** | **$1,447.01** | **$2,370.82** |
| September | 338.69 | | | 1,785.70 | 2,709.51 |
| October | 338.69 | | | 2,124.39 | 3,048.20 |
| November | 338.69 | 1,780.59 | COUNTY TAXES | 682.49 | 1,606.30 |
| December | 338.69 | | | 1,021.18 | 1,944.99 |
| January | 338.69 | 503.09 | HAZARD INS | 856.78 | 1,780.59 |
| February | 338.69 | | | 1,195.47 | 2,119.28 |
| March | 338.69 | 1,780.59 | COUNTY TAXES | 246.43- (PLB) | 677.38 (RLB) |
| April | 338.69 | | | 92.26 | 1,016.07 |
| May | 338.69 | | | 430.95 | 1,354.76 |
| June | 338.69 | | | 769.64 | 1,693.45 |
| July | 338.69 | | | 1,108.33 | 2,032.14 |
| August | 338.69 | | | 1,447.02 | 2,370.83 |

Equal Housing Opportunity © 2008-2015 PennyMac Loan Services, LLC. 6101 Condor Drive, Suite 200, Moorpark, CA 93021, 818-224-7442. NMLS ID # 35953 (www.nmlsconsumeraccess.org). Trade/service marks are the property of PennyMac Loan Services, LLC and/or its subsidiaries or affiliates. Arizona Mortgage Banker License # 0911088. Licensed by the Department of Business Oversight under the California Residential Mortgage Lending Act. Colorado: Regulated by the Division of Real Estate. Colorado office, 700 17th St, Suite 200, Denver, CO 80202. (866) 438-4766. Licensed by the Delaware State Bank Commissioner to engage in business in Delaware, License No. 10604, expires Dec. 31, 2015. Georgia Residential Mortgage Licensee #33027. Illinois Department of Financial & Professional Regulation, 320 W Washington St, Springfield, IL 62786, Residential Mortgage Licensee # MB.6760595. Minnesota: This is not an offer to enter into an agreement and an offer may only be made pursuant to Minn. Stat. 647.206 (3) & (4). Licensed by the Mississippi Department of Banking and Consumer Finance. Licensed by the New Hampshire Banking Department. Licensed by the N.J. Department of Banking and Insurance. North Carolina Permit No. 104753. Ohio Mortgage Broker Act Mortgage Banker Exemption # MBMB.850082.000. Rhode Island Lender License # 20092600LL. Washington Consumer Loan License # CL-35953. For a complete listing of state licenses and important notices, please visit www.pennymacusa.com/state-licenses. Loans not available in Massachusetts and New York.  Some products may not be available in all states. Information, rates and pricing are subject to change without prior notice at the sole discretion of PennyMac Loan Services, LLC. All loan programs subject to borrowers meeting appropriate underwriting conditions. This is not a commitment to lend. Other restrictions apply. All rights reserved. (11-2014)



# EXHIBIT C

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor<br>ANTONIO GABRIEL DE LA TORRE | Case Number<br>1511231 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Wells Fargo Bank, N.A. | |
|---|---|
| | **COURT USE ONLY** |
| Name and address where notices should be sent:<br>Wells Fargo Bank, N.A.<br>Home Equity Group<br>1 Home Campus  X2303-01A<br>Des Moines, IA 50328-0001<br>Telephone number: 1-877-891-0002     email: HEQBANKRUPTCYCH13@wellsfargo.com | ☑ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number: 21-1**<br>(If known)<br><br>Filed on: 11/05/2015 |
| Name and address where payment should be sent (if different from above):<br>Wells Fargo Operations Center<br>P.O. Box 31557  B6955-01B<br>Billings, MT 59107<br><br>Telephone number: 1-877-891-0002     email: HEQBANKRUPTCYCH13@wellsfargo.com | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** $133,013.75

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money Loaned
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>0388 | 3a. Debtor may have scheduled account as:<br><br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>WFCHEQI511231CAC35240388<br>(See instruction #3b) |
|---|---|---|

| 4. Secured Claim (See instruction #4)<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information. | Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: |
|---|---|
| **Nature of property or right of setoff:** ☑ Real Estate ☐ Motor Vehicle ☐ Other | $12,443.67 |
| **Describe:** 3728 ORANGE DR  OXNARD, CA 93036 | **Basis for perfection:** Mortgage/Deed of Trust |
| **Value of Property: $** | **Amount of Secured Claim:**     $133,013.75 * |
| **Annual Interest Rate** 4.250% ☐ Fixed or ☑ Variable<br>(when case was filed) | **Amount Unsecured:**     $ |
| | * or as allowed under Section 506 |

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4). | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). | **Amount entitled to priority:** |
|---|---|---|---|
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). | $_____ |

*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**The total debt claimed, arrearage amount (excluding fees, expenses and charges which are calculated through the Petition Date) and interest rate are calculated thru the date of conversion and not the Petition Date.

B 10 (Official Form 10) (04/13)                                                                                                                                2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements or in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "redacted".)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

| | | |
|---|---|---|
| Print Name: | Angela Allison | |
| Title | VP Loan Documentation | |
| Company | Wells Fargo Bank, N.A. | /s/ Angela Allison        11/06/2015 |
| Address and telephone number (if different from notice address above): | | (Signature)                    (Date) |

Telephone number:                    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

INSTRUCTIONS FOR PROOF OF CLAIM FORM
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

3

B 10A (Attachment A) (04/13)

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | ANTONIO GABRIEL DE LA TORRE, | **Case number:** | 1511231 |
| **Name of creditor:** | Wells Fargo Bank, N.A. | **Last four digits of any number you use to identify the debtor's account:** | 0388 |

Uniform Claim Identifier: WFCHEQ1511231CAC35240388

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due**                                                                                 (1)    $ 122,400.00

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 4.250% | 09/20/2013 | 10/01/2015 | $ 10,546.77 |
| _____ % | __/__/__ | __/__/__ | $ _____ |
| _____ % | __/__/__ | __/__/__ | + $ _____ |
| Total interest due as of the petition date | | | $ 10,546.77 |

Copy total here ▶    (2) + $ 10,546.77

3. **Total principal and interest due**                                                              (3)    $ 132,946.77

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 1/27/14; 12/26/13; 11/25/13 | (1) | $ 66.98 |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ _____ |
| 3. Attorney's fees | | (3) | $ _____ |
| 4. Filing fees and court costs | | (4) | $ _____ |
| 5. Advertisement costs | | (5) | $ _____ |
| 6. Sheriff/auctioneer fees | | (6) | $ _____ |
| 7. Title costs | | (7) | $ _____ |
| 8. Recording fees | | (8) | $ _____ |
| 9. Appraisal/broker's price opinion fees | | (9) | $ _____ |
| 10. Property inspection fees | | (10) | $ _____ |
| 11. Tax advances (non-escrow) | | (11) | $ _____ |
| 12. Insurance advances (non-escrow) | | (12) | $ _____ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ _____ |
| 14. Property preservation expenses. Specify: | | (14) | $ _____ |
| 15. Other. Specify: Over Limit Balance | 12/23/09 | (15) | $ 2,400.00 |
| 16. Other. Specify:_____ | | (16) | $ _____ |
| 17. Other. Specify:_____ | | (17) | +$ _____ |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $ 2,466.98 |

B 10A  (Attachment A) (04/13)                                                                        Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**
☑ No

☐ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with
     applicable non-bankruptcy law.

| | | | | | |
|---|---|---|---|---|---|
| **1. Installment payments due** | Date last payment received by creditor | | 10/15/2013 | | |
| | Number of installment payments due | (1) | 23 | | |
| **2. Amount of installment payments due** | 1 installments @ $442.07 | | $ 442.07 | | |
| | 5 installments @ $427.56 | | $ 2,137.80 | | |
| | 2 installments @ $470.32 | | $ 940.64 | | |
| | 3 installments @ $413.31 | | $ 1,239.93 | | |
| | 2 installments @ $399.05 | | $ 798.10 | | |
| | 2 installments @ $441.82 | | $ 883.64 | | |
| | 4 installments @ $441.81 | | $ 1,767.24 | | |
| | 3 installments @ $456.07 | | $ 1,368.21 | | |
| | 1 installments @ $399.06 | + | $ 399.06 | | |
| | **Total installment payments due as of the petition date** | | $ 9,976.69 | Copy total here ▶ (2) | $ 9,976.69 |
| **3. Calculation of cure amount** | <u>Add</u> total prepetition fees, expenses, and charges | | | Copy total from Part 2 here ▶ + | $ 2,466.98 |
| | <u>Subtract</u> total of unapplied funds (funds received but not credited to account) | | | - | $ 0.00 |
| | <u>Subtract</u> amounts for which debtor is entitled to a refund | | | - | $ 0.00 |
| | **Total amount necessary to cure default as of the petition date** | | | (3) | $ 12,443.67 |

Copy total onto Item 4 of
Proof of Claim form

## Right to Foreclosure:

☑  **Have Possession of the Creditor's home equity line of credit agreement and Mortgage or Deed of Trust**

Debtor(s) executed Creditor's home equity line of credit agreement (the "Debt Agreement") and agreed to be bound by
its terms.   The Debt Agreement is secured by a mortgage or deed of trust.  Creditor is the original mortgagee/successor
or beneficiary of the mortgage or deed of trust.

**NOTE:** ** *The original Draw Period will end on 07/31/2016. Your Account Agreement provides that when your original Draw
Period ends, the monthly payment amount may change.*



Wells Fargo Bank, N.A.
Home Equity Group
MAC X2303-01A
1 Home Campus
Des Moines, IA 50328-0001

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I served the annexed **Proof of Claim** upon each of the entities named below by electronic transmission or by mailing to each of them a copy thereof by enclosing same in an envelope with first class mail postage prepaid addressed to each of them as follows:

-------------------------------------------------------------------------------------------------------

| **(Debtor(s))** | **(Attorney for Debtor(s))** | **(Trustee)** |
|---|---|---|
| ANTONIO GABRIEL DE LA TORRE<br>2430 LOBELIA DR<br>OXNARD, CA 93036 | M JONATHAN HAYES<br>15233 VENTURA BLVD<br>STE 250<br>SHERMAN OAKS, CA 91403 | UNITED STATES TRUSTEE (ND)<br>915 WILSHIRE BLVD<br>STE 1850<br>LOS ANGELES, CA 90017 |

-------------------------------------------------------------------------------------------------------

Dated: 11/06/2015          Signed:   /s/ Angela Allison

# EXHIBIT D

# Transaction History

## Mortgage History

### 1st Mortgage Details

| | | | | |
|---|---|---|---|---|
| Mtg. Date : | 11/22/2006 | 10/17/2003 | 10/16/2003 | 05/30/2003 |
| Mtg. Amt : | $120,000 | $56,000 | $26,000 | $220,000 |
| Mtg. Doc. No : | 247463 | 402914 | 401509 | 179998 |
| Doc. Type : | DEED OF TRUST | DEED OF TRUST | DEED OF TRUST | DEED OF TRUST |
| Loan Type : | CONVENTIONAL | CONVENTIONAL | CONVENTIONAL | CONVENTIONAL |
| Mtg. Rate Type : | | FIXED RATE LOAN | FIXED RATE LOAN | ADJUSTABLE INT RATE LOAN |
| Mtg. Term : | 40 Years | 40 Years | 40 Years | 30 Years |
| Mtg. Rate : | | | | 4.25 |
| Lender : | Wells Fargo Bk Na | Wells Fargo Bk | Wells Fargo Bk | Washington Mutual Bk Fa |
| Borrower 1 : | Delatorre Family 2005 Trust | Delatorre Tony G | Delatorre Tony G | Delatorre Tony G |
| Borrower 2 : | Delatorre A Jr 2005 Trust | | | |
| Borrower 3 : | | | | |
| Borrower 4 : | | | | |

## Foreclosure History

| | | | | |
|---|---|---|---|---|
| Doc Type : | NOTICE OF TRUSTEE'S SALE | NOTICE OF TRUSTEE'S SALE | NOTICE OF DEFAULT | NOTICE OF TRUSTEE'S SALE |
| Recording Date : | 03/19/2015 | 03/03/2015 | 12/08/2014 | 11/28/2014 |
| Fore. Doc. No : | 39958 | 30988 | 154266 | 150256 |
| Orig Mtg Amt : | | | | |
| Orig Doc Date : | 11/22/2006 | 05/30/2003 | 11/22/2006 | 05/30/2003 |
| Lender Name : | | Washington Mutual Bk Fa | Wells Fargo Bk Na | Washington Mutual Bk Fa |

Prepared On   10/02/2015


PRIORITY TITLE

© 2015 CoreLogic  All rights reserved
Note: Refer to the property reports recorded documents

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403.**

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **12/1/2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Anita Carver**     anita.l.carver@wellsfargo.com
- **Karrollanne K Cayce**     ecfmail@aclawllp.com, kcayce@ecf.inforuptcy.com
- **Brian D Fittipaldi**     brian.fittipaldi@usdoj.gov
- **Brandye Foreman**     bforeman@mclaw.org
- **Daniel K Fujimoto**     wdk@wolffirm.com
- **M Jonathan Hayes**     jhayes@srhlawfirm.com,
  roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;staci@srhlawfirm.com;jhayesecf@gmail.com;sevan@srhlawfirm.com;carolyn@srhlawfirm.com;mike@s
- **Megan E Lees**     ecfcacb@aldridgepite.com, MEL@ecf.inforuptcy.com;mlees@aldridgepite.com
- **Sara Morgan**     sara.j.morgan@wellsfargo.com
- **Randall P Mroczynski**     randym@cookseylaw.com
- **Kelly M Raftery**     bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- **John D Schlotter**     ecfmail@aclawllp.com
- **Joseph Smith**     joseph.smith4@wellsfargo.com
- **United States Trustee (ND)**     ustpregion16.nd.ecf@usdoj.gov
- **Jennifer H Wang**     jwang@cookseylaw.com, jodom@cookseylaw.com

☐ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**: On (*date*) **12/1/2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*SECURED CREDITORS  ALL SERVED VIA CERTIFIED MAIL, EXCEPT FOR THOSE LISTED WITH A P.O. BOX AS P.O. BOXES DO NOT ACCEPT CERTIFIED MAIL (THOSE ARE SERVED VIA U.S. MAIL):*

**WELLS FARGO**

**Entity main address from California Secretary of State website:**

Well Fargo Bank, N.A.
101 N. Phillips Avenue
Sioux Falls, SD 57104

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                          Page 8                    **F 3012-1.MOTION.VALUATION**

**Entity's agent for service of process per California Secretary of State website:**

Well Fargo Bank, N.A
c/o CSC- Lawyer Incorporating Service
Agent for Service of Process
2710 Gateway Oaks Dr, Ste 150N
Sacramento, CA 95833

**Entity main address from FDIC website:**

Well Fargo Bank, N.A.
101 N. Phillips Avenue
Sioux Falls, SD 57104

**Bank officer from Wells Fargo's website:**

John G. Stumpf, President and CEO
Well Fargo Bank, N.A.
420 Montgomery Street
San Francisco, CA 94104

**Addresses from Schedules:**

Wells Fargo Bank, N.A.
Anita Carver
Home Equity Group
1 Home Campus X2303-01A

Wells Fargo Bank NA
Po Box 31557
Billings, MT 59107-1557

WF PLL
PO Box 94435
Albuquerque, NM 87199-4435

**Address from POC:**

Well Fargo Bank, N.A.
Home Equity Group
1 Home Campus X2303-01A
Des Moines, IA  50328-001

### PENNYMAC LOAN SERVICES

**Entity main address from California Secretary of State website:**

Pennymac Loan Services, LLC
6101 Condor Drive, Suite #310
Moorpark, CA 93021

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                                    Page 9          **F 2081-**
**2.1.MOTION.CASH.COLLATERAL**

**Entity's agent for service of process per California Secretary of State website:**

Pennymac Loan Services, LLC
c/o C T Corporation System
818 West Seventh St 2nd Fl
Los Angeles CA 90017

**Entity main address from FDIC website:**

N/A

**Bank officer from Entity website:**

Pennymac Loan Services, LLC
Stanford L. Kurland, CEO
6101 Condor Drive, Suite #310
Moorpark, CA 93021

**Addresses from Schedules:**

PennyMac Holdings, LLC
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-7921

PennyMac Loan Services, LLC
PO Box 514387
Los Angeles, CA 90051-4387

PennyMac Loan Services, LLC
c/o Karrollanne K Cayce
Aldridge Connors, LLP
780 Johnson Ferry Rd NE Ste 600
Atlanta, GA 30342

**Address from POC:**

PennyMac Loan Services, LLC
6101 Condor Drive, Suite #310
Moorpark, CA 93021

Served via regular mail:

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                                    Page 10        **F 2081-**
**2.1.MOTION.CASH.COLLATERAL**

Hon. Peter H. Carroll
U.S. Bankruptcy Court
Central District – Northern Branch
1415 State Street, Suite 230
Santa Barbara, CA 93101-2511

Antonio Gabriel De La Torre
2430 Lobelia Dr.
Oxnard, CA 93036

ALL CREDITORS:

Bank of America, N.A.
Malcolm Cisneros
2112 Business Center Drive, 2nd Fl.
Irvine, CA 92612

County Assessor
County Government Center
Room 100
San Luis Obispo, CA 93408-0001

County Tax Collector
P.O. Box 357
Santa Barbara, CA 93102-0357

Deutsche Bank National Trust Company
c/o The Wolf Firm
2955 Main Street, 2nd Fl.
Irvine, CA 92614-5909

Mercedes-Benz Financial Services USA
c/o Bk Servicing, LLC
PO Box 131265
Roseville, MN 55113-0011

ACS/NELNET EDUCATION
501 Bleecker Street
Utica, NY 13501

Account Recovery Services
PO 1691
Oxnard, CA 93032-1691

Alliance One
4850 Street Road, Suite 300
Trevose, PA 19053-6643

Bank of America
PO Box 982238
El Paso, TX 79998-2238

Bank of America Mortgage Servicing

1800 Tapo Canyon Road
Simi Valley, CA 93063-6712

Capital Management Services LP
698 South Ogden Street
Buffalo, NY 14206-2317

Capital One Bank, N.A.
PO Box 71083
Charlotte, NC 28272-1083

Capital One Bank, N.A.
15000 Capital One Drive
Richmond, VA 23238-1119

Chase Auto Finance
PO Box 901003
Fort Worth, TX 76101

Chase Credit Card Services
PO Box 15298
Wilmington, DE 19850-5298

Chase Mortgage
PO Box 24696
Columbus, OH 43224-0696

Citi Credit Card Services
PO Box 6241
Sioux Falls, SD 57117-6241

County of Ventura
5171 Verdugo Way
Camarillo, CA 93012-8603

Credit Collection Services
Two Wells Ave.
Newton, MA 02459-3246

Discover Bank
Discover Products Inc.

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                    Page 11        F 2081-
2.1.MOTION.CASH.COLLATERAL

PO Box 3025
New Albany, OH 43054-3025

Discover Financial Services LLC
PO Box 3025
New Albany, OH 43054-3025

First Source Advantage LLC
PO Box 628
Buffalo, NY 14240-0628

GC Services LP
6330 Gulfton
Houston, TX 77081

Global Credit Collection
5440 North Cumberland, Suite 300
Chicago, IL 60656-1486

Kevin Jewelers
25845 Railroad Ave., Suite 4
Saugus, CA 91350-2544

MB Financial Services
36455 Corporate Drive
Farmington Hills, MI 48331-3552

MCYDSNB
9111 Duke Road
Mason, OH 45040-8999

NELNET EDUCATION LOAN FUNDING TRUST
c/o Educational Credit Management Corp.
PO Box 16408
St. Paul, MN 55116-0408

Northland Group Inc.
PO Box 390905
Minneapolis, MN 55439-0905

Professional Recovery Systems, Inc.
PO Box 1880
Voorhees, NJ 08043-7880

Quicken Loans, Inc.
635 Woodward Ave.
Detroit, MI 48226-3408

SYNCB/ Jewelry Accents
c/o PO Box 965036
Orlando, FL 32896-0001

SYNCB/ Sync Bank Luxury

c/o PO Box 965036
Orlando, FL 32896-0001

Suttell Hammer and White
PO Box C-90006
Bellevue, WA 98009

US Bank
PO Box 130
Hillsboro, OH 45133-0130

US Bank
Bankruptcy Department
PO Box 5229
Cincinnati, OH 45201-5229

US Bank Credit Card Services
101 5th Street East, Suite A
Saint Paul, MN 55101-1808

United Recovery Systems LP
PO Box 722929
Houston, TX 77272-2929

Ventura County Credit Union
6026 Telephone Road
Ventura, CA 93003-5399

WF Finance
800 Walnut Street
Des Moines, IA 50309-3605

Wells Fargo Bank Card Services
PO Box 14517
Des Moines, IA 50306-3517

Franchise Tax Board
Bankruptcy Section MS: A-340
PO Box 2952
Sacramento, CA 95812

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

Employment Development Dept.
Bankruptcy Group MIC 92E
Po Box 826880
Sacramento, CA 94280

State Board of Equalization
Account Information Group, MIC: 29
P.O. Box 942879
Sacramento, CA 94279-0029

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                                Page 12        F 2081-
2.1.MOTION.CASH.COLLATERAL

U. S. Securities and Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

Attorney General
United States Department of Justice
Ben Franklin Station
P. O. Box 683
Washington, DC 20044

Civil Process Clerk
United States Attorney's Office
Federal Building, Room 7516

300 North Los Angeles Street
Los Angeles, CA 90012

Portfolio Recovery Associates, LLC
PO Box 41067
Norfolk, VA 23542

REMOVED ADDRESS/RETURNED MAIL:

~~Tri Countries Bank~~
~~PO Box 494549~~
~~Redding, CA 96049-4549~~

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 1, 2015 | **Ja'Nita Fisher** | /s/ **Ja'Nita Fisher** |
|---|---|---|
| Date | Printed Name | Signature |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2015                                      Page 13        **F 2081-**
**2.1.MOTION.CASH.COLLATERAL**